**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**January 3, 2007**

**Elisabeth A. Shumaker**
**Clerk of Court**

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

No. 06-3145

AARON SHAFFER,

Defendant-Appellant.

---

**Appeal from the United States District Court**
**for the District of Kansas**
**(D.C. No. 04-CR-40146-01-JAR)**

---

Christopher M. Joseph, Joseph & Hollander, P.A., Topeka, Kansas, for Defendant-Appellant.

James A. Brown, Assistant United States Attorney (Eric F. Melgren, United States Attorney, and Christine E. Kenney, Assistant United States Attorney, on the brief), Topeka, Kansas, for Plaintiff-Appellee.

---

Before **MURPHY**, **McKAY**, and **GORSUCH**, Circuit Judges.

---

**GORSUCH**, Circuit Judge.

---

Aaron Shaffer challenges his conviction for distribution and possession of child

pornography, *see* 18 U.S.C. §§ 2252A(a)(2), 2252A(a)(5)(B), on four grounds. Primary

among these, Mr. Shaffer claims that he did not, as a matter of law or fact, "distribute" child pornography when he downloaded images and videos from a peer-to-peer computer network and stored them in a shared folder on his computer accessible by other users of the network. Mr. Shaffer also asserts that the District Court improperly limited the testimony of one of his expert witnesses, wrongly admitted certain Fed. R. Evid. 404(b) evidence, and erroneously instructed the jury. Finding none of these arguments persuasive, we affirm.

***

Kazaa is a peer-to-peer computer application that allows users to trade computer files through the Internet. *See generally* Aplt. App. at 77-78, 80-81, 89-92, 183-84, 384-86.[1] It is hardly a unique service; at any one time today, there are apparently in excess of four to five million people online sharing over 100 million files. *Id*. at 90. Users begin at Kazaa's website. There, they obtain the software necessary for file trading by clicking an installation "wizard"[2] that walks them through a step-by-step setup process. *Id*. at 81-84;

---

[1] As Kazaa's web site explains: "How Peer-To-Peer (P2P) and Kazaa Software Works. Kazaa uses peer-to-peer technology. This means that individual users connect to each other directly, without need for a central point of management. All you need to do is install Kazaa and it will connect you to other Kazaa users. For example Peter downloads Kazaa and installs it onto his computer. Mary also has Kazaa installed on her computer. Peter uses Kazaa to search for a file he is looking for. Kazaa finds the file on Mary's computer. Peter can now download the file directly from Mary." Kazaa, http://www.kazaa.com/us/help/new_p2p.htm (last visited Dec. 11, 2006).

[2] An installation "wizard" is "[a] program that guides a user through a procedure by means of a sequence of simple on-screen instructions and options." Oxford English

(continued...)

*see also generally* Aple. App. at 27-49. Before installation, the wizard requires users to acknowledge and accede to Kazaa's licensing agreement. Aplt. App. at 84; *see also* Aple. App. at 31. Users then identify a destination on their computers where they want the Kazaa file sharing software located, and Kazaa creates a "shortcut" icon on the user's desktop. Aplt. App. at 84-85. Upon installation, Kazaa's software walks users through certain steps to create a folder called "My Shared Folder" (hereinafter, "shared folder") on their computer's hard drive. *Id*. at 86-87. Here, Kazaa users store the files they download from the shared folders of other Kazaa users. *Id*. at 94, 398-99. At the same time, anything one has in one's own Kazaa shared folder may be accessed and downloaded by other Kazaa users. *Id*. at 94-95, 398-99.[3] The only requisites are that both users – the one whose files are being transferred as well as the one who is receiving the files – must be on the Internet and have the Kazaa software application open at the same time. *Id*. at 393-94. Kazaa's software also shows the user in real time exactly how many of his or her files are being accessed and copied by other Kazaa users. *Id*. at 87-88.

_____

(...continued)
Dictionary (2nd ed. 1989) (forthcoming March 2006 draft additions), *available at* Oxford English Dictionary, http://dictionary.oed.com (enter "wizard" and then follow hyperlink) (last visited Dec. 12, 2006).

[3]As Kazaa explains in its license agreement: "4.4 My Shared Folder. By saving a file in My Shared Folder, you understand that it will be available for any other user of Kazaa and compatible programs. These users may find your files and subsequently download them from you. By doing so your Internet connection is being used." End User License Agreements, http://guide.kazaa.com/us/eula.htm (last visited Dec. 11, 2006) (hereinafter *Kazaa Guide*).

A user can, however, select an option that precludes other users from downloading materials from his or her computer. *Id*. at 88-89.[4]

To download an item from another computer's shared folder, a Kazaa user simply double clicks on that file, and it is then transferred to the shared folder on the recipient user's computer. Aplt. App. at 91. There are only two ways for items to be placed in a user's shared folder. First, one must go online, search for an item, and download the material into the shared folder. *Id*. at 94. Second, one may take files already existing on his or her computer and move them into the shared folder. *Id*. at 94-95. Either way, the placement of items in one's shared folder involves a conscious effort. *Id*. A user can of course move items out of the shared folder to other folders on his or her computer, and doing so precludes other Kazaa users from accessing and downloading such material. *Id*. at 95.

This case arose when Ken Rochford, an Arizona-based special agent from the United States Department of Homeland Security's Bureau of Immigration and Customs Enforcement ("ICE"), noticed that a certain Kazaa account user with the screen name shaf@Kazaa had in his shared folder accessible to other Kazaa users a large number of

[4]*See also Kazaa Guide* at 4.4 ("To disable sharing go to Tools->Options->Traffic and check Disable Sharing. To disable sharing of selected files right click the file in My Kazaa and select Stop Sharing this file. The Kazaa program is a peer-to-peer program; this means that it communicates with other peers (other Kazaa or compatible programs). Other users may download files that you have stored in the My Shared Folder and other folders you have selected to be shared. Don't share files which are confidential, such as financial information, or which you do not have the right to distribute.").

files containing images and videos of child pornography. *See* Aplt. App. at 95-111, 1152-73. Special Agent Rochford sought to download some of those images from shaf@Kazaa's computer onto his own and had no difficulty doing so. *Id*. at 97-111.

Authorities later learned that the user associated with shaf@Kazaa was Mr. Shaffer, then a 27-year-old college student living with his mother and stepfather in Topeka, Kansas. David Zimmer, a Kansas-based ICE special agent, obtained and executed a search warrant on Mr. Shaffer's residence and computer. *See id*. at 204-49. ICE special agents ultimately found within Mr. Shaffer's Kazaa shared folder approximately 19 image files and 25 videos containing child pornography, along with text documents describing stories of adults engaging in sex with children. *See id*. at 267, 273-300; *see also* Aple. App. at 50-57.

During the course of the search of his home and computer, Mr. Shaffer consented to an interview with Special Agent Zimmer. *See* Aplt. App. at 213-15. During that interview, according to Special Agent Zimmer's testimony at trial, Mr. Shaffer admitted to being the sole user of the computer in his home; employing the screen name shaf@Kazaa; and knowingly downloading through Kazaa 100 movies and 20 still photos involving child pornography, which he estimated occupied a total of approximately 10 gigabytes. *See id*. at 220-24, 228-29. Mr. Shaffer defined child pornography for Special Agent Zimmer as involving prepubescent children as young as six or seven years old. *Id*. at 220, 222. Mr. Shaffer further admitted that he stored images of child pornography in

his Kazaa shared folder. *Id*. at 223, 226-27. He explained that he did so because, among other things, Kazaa gave him "user points" and various incentive rewards corresponding to how many images other users downloaded from his computer. Aplt. App. at 227-28. Mr. Shaffer indicated he knew that other people had downloaded child pornography from him. *Id*. at 228. And he stated that it takes up to 100 hours to download certain files using Kazaa, so sometimes when he went to work he would leave his computer on in order to make his images and videos available for download by other users. *Id*.

Mr. Shaffer also testified at trial. He did not dispute that he gave an interview to Special Agent Zimmer or much of Special Agent Zimmer's description of that interview. *See*, *e.g.*, *id*. at 459-61. Mr. Shaffer did testify, however, that he could not recall telling Special Agent Zimmer that he knew other Kazaa users had downloaded child pornography from his computer. *See* Aplt. App. at 460. After a four-day trial, a jury returned guilty verdicts against Mr. Shaffer for both possession and distribution of child pornography. *Id*. at 58. The District Court subsequently sentenced him to 60 months of incarceration. *Id*. at 558.

\*\*\*

1. Mr. Shaffer contends there was insufficient evidence presented at trial to sustain his conviction for distribution of child pornography.[5] Under Section 2252A(a)(2), it is unlawful for a person knowingly to distribute child pornography by any means,

[5]Mr. Shaffer raises no such sufficiency challenge to his possession conviction.

including by computer.[6] Mr. Shaffer frankly concedes that "[h]e allowed, or caused, distribution by leaving files on his computer that other Kazaa users could access." Aplt. Br. at 22. He also now concedes that a rational jury could infer that he did so knowingly (and even intentionally): "[A] reasonable jury could conclude from this evidence that Mr. Shaffer intended to allow others to take the material from his computer." *Id*. But, Mr. Shaffer argues, to "distribute" something, a person must actively transfer possession to another, "such as by mail, e-mail, or handing it to another person." *Id*. And here, Mr. Shaffer contends, he was only a passive participant in the process; there is no evidence that he "personally complete[d] any [such] transaction." *Id*.

The relevant statute does not itself define the term "distribute," so we look to how the term is understood as a matter of plain meaning. Black's offers this definition: "1. To apportion; to divide among several. 2. To arrange by class or order. 3. To deliver. 4. To spread out; to disperse." Black's Law Dictionary 508 (8th ed. 2005). Webster's adds this understanding: "to divide among several or many . . . deal out . . . apportion esp. to members of a group or over a period of time . . . [allot] . . . [dispense] . . . to give out or deliver." Webster's Third New Int'l Dictionary Unabridged 660 (2002). The instruction

---

[6]"Any person who . . . knowingly receives or distributes . . . any child pornography [or any material that contains child pornography] that has been mailed, or shipped or transported in interstate or foreign commerce by any means, including by computer . . . shall be punished as provided in subsection (b)." 28 U.S.C. § 2252A(a). Though it could have done so, the government did not charge Mr. Shaffer with the knowing *receipt* of child pornography under this statutory provision.

-7-

offered by the District Court to the jury captured much the same sentiment: "To distribute something simply means to deliver or transfer possession of it to someone else."

We have little difficulty in concluding that Mr. Shaffer distributed child pornography in the sense of having "delivered," "transferred," "dispersed," or "dispensed" it to others. He may not have actively pushed pornography on Kazaa users, but he freely allowed them access to his computerized stash of images and videos and openly invited them to take, or download, those items. It is something akin to the owner of a self-serve gas station. The owner may not be present at the station, and there may be no attendant present at all. And neither the owner nor his or her agents may ever pump gas. But the owner has a roadside sign letting all passersby know that, if they choose, they can stop and fill their cars for themselves, paying at the pump by credit card. Just because the operation is self-serve, or in Mr. Shaffer's parlance, passive, we do not doubt for a moment that the gas station owner is in the business of "distributing," "delivering," "transferring" or "dispersing" gasoline; the *raison d'etre* of owning a gas station is to do just that. So, too, a reasonable jury could find that Mr. Shaffer welcomed people to his computer and was quite happy to let them take child pornography from it.

Indeed, Mr. Shaffer admitted that he had downloaded child pornography from other users' Kazaa shared folders and understood that file sharing was the very purpose of Kazaa. He admitted that he had child pornography stored in his computer's Kazaa shared

folder. Mr. Shaffer could have, but did not, save the illicit images and videos in a computer folder not susceptible to file sharing. Likewise, he could have, but did not, activate the feature on Kazaa that would have precluded others from taking materials from his shared folder. Quite the opposite. According to Special Agent Zimmer, Mr. Shaffer acknowledged that he *knew* other people had downloaded child pornography from his shared folder. Mr. Shaffer cannot recall making this particular admission, but we are obliged to view the facts in the light most favorable to the government, *United States v. Bush*, 405 F.3d 909, 919 (10th Cir. 2005), and the jury was free to credit Special Agent Zimmer's testimony and discredit Mr. Shaffer's. According to Special Agent Zimmer, moreover, Mr. Shaffer confessed that he kept child pornography in his shared folder in order to win special concessions from Kazaa, concessions made only when others downloaded from his shared folder. And Special Agent Rochford had no trouble whatsoever picking and choosing for download images and videos from Mr. Shaffer's child pornography collection.

Though the question how Section 2252A applies to peer-to-peer file sharing programs may be relatively novel, at least one other court has faced the question we do today and reached precisely the same conclusion. In *United States v. Abraham*, the court held that "the defendant *distributed* a visual depiction when as a result of the defendant's installation of an internet peer-to-peer video file sharing program on his computer, a Pennsylvania state trooper was able to download the child pornography from the

defendant's computer to the trooper's computer." No. 05-344, 2006 U.S. Dist. LEXIS 81006 at *22 (W.D. Pa. Oct. 24, 2006) (emphasis added); *see also id.* at *19-*21 (looking to dictionary definitions for plain meaning). Courts faced with related issues have, in a variety of other contexts, issued rulings similarly harmonious with our own. *See United States v. Mathenia*, 409 F.3d 1289, 1290 (11th Cir. 2005) (upholding 15-level sentencing enhancement for, *inter alia*, distributing child pornography through peer-to-peer file-sharing groups); *United States v. Gunderson*, 345 F.3d 471, 473 (7th Cir. 2003) (affirming 5-level increase in base-offense level for distribution for pecuniary gain; "[a]s for his argument that he did not engage in distribution because his computer automatically distributed files, the fact that his computer traded files automatically is irrelevant: Gunderson is the person who programmed his computer to trade files in this manner"); *State v. Perry*, 697 N.E.2d 624, 628 (Ohio 1998) ("Posting software on a bulletin board where others can access and download it is distribution."); *United States v. Todd*, 100 Fed. Appx. 248, 250 (5th Cir. 2004) (unpub.) (user of file-share software who downloaded child pornography images and "ma[de] them accessible to others" through file sharing met the definition of "trafficking" for purposes of a sentencing enhancement), *vacated on other grounds*, 543 U.S. 1108 (2005) (*Booker*), *judgment reinstated*, 158 Fed. Appx. 526, 527 (5th Cir. 2006).[7] In the drug context, too, courts have construed the term

_____

[7]Even the Supreme Court has described the users of peer-to-peer networks in terms of the distribution of files. *See Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545

(continued...)

"distribution," as defined by the statute, broadly, *see United States v. Jackson*, 213 F.3d 1269, 1296 (10th Cir. 2000), *vacated and remanded on other grounds*, 531 U.S. 1003 (2000), and in fact much more broadly than we need suggest today in the child pornography context in order to resolve the case now before us. Under narcotics laws, the term "distribution" has been read to criminalize virtually any "act[ ] perpetrated in furtherance of a transfer or sale, such as arranging or supervising the delivery, or negotiating for or receiving the purchase price." *Jackson*, 213 F.3d at 1296 (internal quotation omitted).

2.  At trial, Mr. Shaffer proffered a computer expert who sought to opine that, based upon the file structure of Mr. Shaffer's computer hard drive, he was on a "porn fishing expedition with no particular calculation toward any particular type of material, other than generally sexually explicit material." Aplt. App. at 366-67. After a *Daubert* hearing, *see Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993), the District Court ruled that the proposed testimony went to Mr. Shaffer's state of mind (*mens rea*) – vouching, in essence, that Mr. Shaffer did not mean to seek out or disseminate illegal

[7](...continued)
U.S. 913, —, 125 S.Ct. 2764, 2771 (2005) ("Some musical performers, for example, have gained new audiences by *distributing* their copyrighted works for free across peer-to-peer networks, and some *distributors* of unprotected content have used peer-to-peer networks to disseminate files, Shakespeare being an example.") (emphases added); *id.* at 2770 ("[P]eer-to-peer networks are employed to store and *distribute* electronic files by universities, government agencies, corporations, and libraries, among others.") (emphasis added); *id.* at 2771.

child pornography.  *See* Aplt. App. at 366-68.  As such, the court ruled the proposed opinion inadmissible, because expert witnesses are "not allowed to testify about the ultimate [issues] in the case."  *Id*. at 367.[8]

Mr. Shaffer argues that the District Court erred in refusing to permit the proffered testimony.  We review the District Court's decision for abuse of discretion, *see United States v. Turner*, 285 F.3d 909, 912 (10th Cir. 2002), and find none.  Mr. Shaffer's expert sought to suggest to the jury, at the very least by inference, that Mr. Shaffer did not *knowingly* possess or distribute unlawful child pornography as opposed to simple adult pornography.  Yet it was precisely this issue that was hotly contested in, and an essential element of, the crimes with which he was charged.  *See* Aplt. App. at 67-68, 70-72; *see also* 18 U.S.C. §§ 2252A(a)(2) (requiring proof that defendant *knowingly* received or distributed child pornography), 2252A(a)(5)(B) (requiring proof of *knowing* possession).  And the Federal Rules of Evidence plainly prohibit an "expert witness . . . [from] stat[ing] an opinion or inference as to whether the defendant did or did not have the mental state or condition constituting an element of the crime charged or of a defense thereto."  Fed. R. Evid. 704(b).

---

[8]The expert also sought, and was permitted, to offer testimony and opinions about a wide range of other matters, including, *inter alia*, the possible contamination of Mr. Shaffer's hard drive by federal authorities and how computers and Kazaa work.  *See* Aplt. App. at 68.

3.    Mr. Shaffer suggests that the District Court also erred in admitting evidence of a written narrative found on his computer entitled "House of Incest." According to Mr. Shaffer, because the tale was not a video or photographic image it was protected First Amendment material irrelevant to the crimes charged, and its admission by the District Court pursuant to Rule 404(b) of the Federal Rules of Evidence was unduly prejudicial. As before, our review of this evidentiary decision is confined to ascertaining whether the District Court abused its discretion.

Mr. Shaffer's primary trial strategy was (again) to claim that he did not have the requisite *mens rea* – that is, he did not *knowingly* possess or distribute child pornography. The proffered evidence was offered, and does tend, to rebut this defense. The material involved a story about adult sex with children. *See generally* Aplt. App. at 127-31, 141, 286-87. It was on Mr. Shaffer's computer and in his shared folder accessible to other Kazaa users. *Id*. at 134-36. And it had been there for some months at the time his computer was searched and seized. *See id*. at 137. The evidence was thus relevant to the questions of Mr. Shaffer's *mens rea*, the presence of a plan to download and share pornographic materials involving children, and the absence of mistake on his part in doing so.

On the other side of the ledger, while all probative evidence is prejudicial, as a written narrative this evidence was surely far less prejudicial than the plethora of macabre images and films placed before the jury. Indeed, one might say that the "House of Incest"

-13-

story was perhaps the least of Mr. Shaffer's worries at trial. Even so, the District Court provided a limiting instruction that the jury was not entitled to use "House of Incest" evidence for improper propensity purposes. *See* Aplt. App. at 38-39, 49, 286-88. Given all these facts and circumstances, we are unable to find any abuse of discretion in the admission of this piece of evidence.

4.       Finally, Mr. Shaffer argues that the District Court erred in instructing the jury on the distribution count against him. Instructions 10 and 11, offered by Mr. Shaffer, asked whether he "knowingly . . . distributed" child pornography. *Id*. at 26-30. Meanwhile, Instruction 2, proposed by the government, spoke of the question for the jury as whether Mr. Shaffer "knowingly and intentionally distributed and caused to be distributed" child pornography. Aplt. App. at 11-12, 17. Thus, somewhat inexplicably, the government took upon itself the burden of showing (i) an *intent* to distribute and (ii) that Mr. Shaffer "caused [child pornography] to be distributed," despite the fact that neither are required to prove the crime charged and neither were clearly demanded by Mr. Shaffer. *See* 18 U.S.C. § 2252A(a)(2) (requiring proof only of "knowing[] . . . distribut[ion]").

On the second day of deliberation, the jury sent the judge the following questions highlighting the inconsistency between Instructions 2, 10, and 11:

1.       What is the legal difference in this instance between intent to distribute and intent to cause to be distributed?

2.       The wording in the instruction #2 Count 1 is that the defendant intentionally <u>distributed</u> <u>and</u> <u>caused to be distributed</u>. Must we find

-14-

the defendant guilty or innocent of <u>both</u> distributing and causing to be distributed in order to pass a judgement [sic]?

Aplt. App. at 57; *see also id*. at 528. Flipping positions, the government urged the District Court to respond by instructing the jury to focus on the language in Mr. Shaffer's Instructions 10 and 11, and not in its own Instruction 2. *See id*. at 529-31. Mr. Shaffer protested, asking the District Court to answer the jury's question by simply referring them to the instructions as a whole. *See id*. at 529-31. Following Mr. Shaffer's suggestion, the District Court sent the jury the following answer: "The elements of the government's burden of proof on Counts 1 and 2 are contained in the instructions, and you should read and consider the instructions as a whole." *Id*. at 57; *see also id*. 531.

Mr. Shaffer did not enter a contemporaneous objection to the District Court's answer to the jury's question, nor for that matter did he object to the court's initial instructions. Now, however, Mr. Shaffer contends that the District Court's directions improperly confused the jury on the question whether the government had to prove "that Mr. Shaffer distributed child pornography, that he caused child pornography to be distributed, or both." Aplt. Br. at 19. As he failed to give the District Court an opportunity to pass on this question, we are constrained to review this newly minted issue only for plain error. *United States v. Duran*, 133 F.3d 1324, 1330 (10th Cir. 1998).

We find no error at all. The District Court could well have told the jury simply to follow Mr. Shaffer's own instruction under which the government merely had to prove knowing distribution. Instead, the District Court instructed the jury to look at the

-15-

instructions as a whole, including Instruction 2 which placed additional, non-statutory obligations on the government – including a higher level of *mens rea* (intent rather than knowledge) and something arguably approaching a new element ("caused to be distributed"). If anything, the District Court's answer to the jury was needlessly favorable to Mr. Shaffer, not the other way around. In any event, it was Mr. Shaffer who (in what was surely a wise tactical move) reversed course and asked the District Court to respond to the jury by telling it to look at the instructions as a whole rather than focus on his Instructions 10 and 11. That is to say, if there were any error here (and again we see none), it would have been purely invited error. *See United States v. Visinaiz*, 428 F.3d 1300, 1310-11 (10th Cir. 2005) (a party who induces an erroneous ruling may not have it set aside on appeal).

***

The District Court's judgment is AFFIRMED.