BRISCOE, Chief Judge,
dissenting:
I respectfully dissent. In my view, the majority adopts an unnecessarily restrictive interpretation of the statutory phrase “visual depiction,” as employed in 18 U.S.C. §§ 2252(a)(2) and (a)(4)(B), and in turn imposes an unduly burdensome level of proof on prosecutors seeking convictions under these child pornography statutes. Properly interpreted, the phrase “visual depiction” refers to the substance of an image of child pornography, and thus encompasses not only the particular digital copy of that image received, possessed, or distributed by the defendant, but also any prior generations of that image (digital or otherwise). Applying that definition in this case, I conclude the evidence presented by the government at trial was sufficient to allow the jury to find that the images at issue were transported in interstate commerce. I also conclude there is no merit to Dayton’s challenge to the district court’s instruction defining the term “distribute.” Thus, I would affirm Dayton’s convictions and resulting sentence.
7. Sufficiency of evidence-interstate commerce
Dayton contends that the evidence presented by the government at trial was insufficient to prove the requisite interstate nexus under the two statutes he was convicted of violating. In reviewing this contention, “we ask whether, viewing the evidence in the light most favorable to the government as the prevailing party, any rational trier of fact could have found the essential [jurisdictional] element[] of the crime beyond a reasonable doubt.” United States v. Hutchinson, 578 F.3d 1011, 1033 (10th Cir.2009).
Dayton’s convictions for distributing and possessing child pornography arose under 18 U.S.C. §§ 2252(a)(2) and (a)(4)(B), which, at the time of his indictment, provided:
(a) Any person who—
(2) knowingly receives, or distributes, any visual depiction that has been mailed, or has been shipped or transported in interstate or foreign commerce, or which contains materials which have been mailed or so shipped or transported, by any means including by computer, or knowingly reproduces any visual depiction for distribution in interstate or foreign commerce by any means *600 including by computer or through the mails, if—
(A) the producing of such visual depiction involves the use of a minor engaging in sexually explicit conduct; and
(B) such visual depiction is of such conduct; [or]
(4) * * *
(B) knowingly possesses 1 or more books, magazines, periodicals, films, video tapes, or other matter which contain any visual depiction that has been mailed, or has been shipped or transported in interstate or foreign commerce, or which was produced using materials which have been mailed or so shipped or transported, by any means including by computer, if—
(I) the producing of such visual depiction involves the use of a minor engaging in sexually explicit conduct; and
(ii) such visual depiction is of such conduct ... shall be punished as provided in subsection (b) of this section.
18 U.S.C. §§ 2252(a)(2) and (a)(4)(B) (2006). As Dayton correctly notes, both of these statutory subsections require, as a jurisdictional element, proof that the “visual depictions” at issue were “mailed ... or ... shipped or transported in interstate or foreign commerce.[1] Id.
As I see it, the critical task in resolving Dayton’s jurisdictional challenge is determining precisely what was intended by the statutory phrase “visual depiction.”[2] In the majority’s view, a “visual depiction,” in the context of a case like this involving digital images of child pornography, refers narrowly to a specific graphics file (such as the files found on Dayton’s hard drive and CDs). Thus, under the majority’s view, identical digital copies of the same image constitute separate “visual depictions” for purposes of the statute, and each such “visual depiction” must have traveled in interstate or foreign commerce in order to satisfy the jurisdictional element. In other words, it matters not that the original version, or an earlier generation copy, of the substantive image has traveled in interstate commerce; instead, the precise copy possessed by the defendant must have traveled in interstate commerce.[3] In contrast, the government effectively suggests that the phrase “visual depiction” refers to the substance of the digital image, and not necessarily to a specific graphics file. In other words, the government suggests, identical copies of the same image constitute the same “visual depiction” for purposes of the statute. Consequently, under the government’s view, it *601 is enough to satisfy the jurisdictional element if the original version or prior generation copies of the image at issue have previously traveled in interstate or foreign commerce. See United States v. Vosburgh, 602 F.3d 512, 534 n. 22 (3d Cir.2010) (suggesting, without deciding, that different digital copies of the same image “might be considered the same ‘visual depictions,’ since they are, for all intents and purposes, the same pictures”).
To resolve which of these interpretations is correct, I begin, as I must, with the language of the statute. See Engine Mfrs. Ass’n v. South Coast Air Quality Mgmt. Dist., 541 U.S. 246, 252, 124 S.Ct. 1756, 158 L.Ed.2d 529 (2004) (“Statutory construction must begin with the language employed by Congress and the assumption that the ordinary meaning of that language accurately expresses the legislative purpose.”) (internal quotation marks omitted). The statutory definition of the phrase “visual depiction,” as of the time of Dayton’s conduct and indictment, was non-exclusive, stating simply that “ ‘visual depiction’ includes undeveloped film and videotape, and data stored on computer disk or by electronic means which is capable of conversion into a visual image.” 18 U.S.C. § 2256(5) (2007).[4] Although this definition makes reference to digital images (i.e., “data ... which is capable of conversion into a visual image”), it does nothing to resolve the question at issue.
I therefore turn to the ordinary meaning of the phrase. See Hardt v. Reliance Standard Life Ins. Co., — U.S.-, 130 S.Ct. 2149, 2156, 176 L.Ed.2d 998 (2010) (noting that courts must assume the ordinary meaning of statutory language expresses the legislative purpose). The term “visual” is commonly defined as “Married out or performed by means of vision,” and “an object of vision or sight; capable of being seen; perceptible, visible.” Oxford English Dictionary (2d ed.1989; online version Nov. 2010). In turn, the term “depiction” is defined as “[t]he action of depicting; painted representation, picture; graphic description,” and the term “depict” is defined as “[t]o portray, delineate, figure anyhow,” and “[t]o represent, as a painting or picture does.” Id. Together, then, these terms refer to a portrayal or representation that is capable of being seen, i.e., a visually observable image. Unfortunately, however, this again fails to resolve the question at issue.
I thus turn, for further assistance, to legislative history and express Congressional findings. In 1996, Congress amended the statutory definition of “visual depiction” in order to expressly “include stored computer data.” S.Rep. No. 104-358, at 10 (1996). In doing so, Congress found that “where children are used in its production, child pornography permanently records the victim’s abuse, and its continuing existence causes the child victims of sexual abuse continuing harm by haunting those children in future years ....” Congressional Findings, 110 Stat. 3009-26, notes following 18 U.S.C. § 2251 (quoting Pub.L. 104-208) (emphasis added). In 2003, Congress, in an effort to bolster child pornography laws, passed the Prosecutorial Remedies and *602 Other Tools to end the Exploitation of Children Today Act (PROTECT Act). At that time, Congress expressly found that “[t]he vast majority of child pornography prosecutions today involve images contained on hard drives, computer disks, and/or related media.” Congressional Findings, 117 Stat. 676, notes following 18 U.S.C. § 2251 (quoting Pub.L. 108-21). More importantly, Congress found that “[cjhild pornography circulating on the Internet has, by definition, been digitally uploaded or scanned into computers and has been transferred over the Internet, often in different file formats, from trafficker to trafficker,” and that, consequently, “fa]n image seized fivm a collector of child pornography is rarely a first-generation prodrnt ....” Id. (emphasis added).
In my view, the legislative history and Congressional findings firmly support the government’s assertion that the original version of an image of child pornography, as well as all subsequent generations of that same image, constitute the same “visual depiction” for purposes of prosecution under § § 2252(a)(2) and (a)(4)(B). As outlined above, Congress was well aware that images of child pornography, following their initial production (by whatever method), are repeatedly copied, typically digitally, by child pornography traffickers and collectors, and that, as a result, images seized from collectors nowadays are “rarely ... first-generation produces] .... ” Id. In other words, Congress was well aware that it is routine for a single image of child pornography to be repeatedly digitally copied and distributed over the Internet to traffickers and collectors throughout the world. And the difficulty of eradicating all such images is undoubtedly why Congress recognized that an image of child pornography, once produced for the first time, will continue to “haunt” a victim “in future years.” Congressional Findings, 110 Stat. 3009-26, notes following 18 U.S.C. § 2251 (quoting Pub.L. 104-208). In turn, that is why Congress expressly found that “[t]he Government ... has a compelling interest in ensuring that the criminal prohibitions against child pornography remáin enforceable and effective.” Congressional Findings, 117 Stat. 676, notes following 18 U.S.C. § 2251 (quoting Pub.L. 108-21). In sum, the legislative history and Congressional findings weigh heavily, if not decisively, in favor of the more expansive interpretation of the phrase “visual depiction” urged by the government.
If that were not enough, I further conclude, as a matter of common sense, that the government’s interpretation of the phrase “visual depiction” is superior to that of the majority. By treating all copies of the same substantive image as a single “visual depiction,” the government’s proposed interpretation properly allows courts and jurors to take into account the relevant history of the substantive image, i.e., where it originated and where it traveled prior to the defendant receiving and possessing it.[5] In other words, the government’s proposed interpretation allows courts and jurors to consider when the substantive image first entered the *603 “stream of interstate [or foreign] commerce,” United States v. Yellow Cab Co., 332 U.S. 218, 228-29, 67 S.Ct. 1560, 91 L.Ed. 2010 (1947), overruled on other grounds by Copperweld Corp. v. Independence Tube Corp., 467 U.S. 752, 104 S.Ct. 2731, 81 L.Ed.2d 628 (1984), and it acknowledges the reality, as Congress has found, that images of child pornography typically remain forever in that stream. In contrast, the majority’s position renders irrelevant the prior history of the image; it thus matters not where or how the image itself originated, or how many hundreds or thousands of times the image has been digitally copied and distributed to traffickers and collectors around the world. Instead, the majority’s position focuses narrowly, and unreasonably in my view, on the history of the particular digital copy possessed by the defendant. And given what we have learned in this case and others about the creation of digital copies, the unfortunate reality is that the majority’s position will effectively stymie the intent of Congress by preventing the prosecution of many child pornography collectors. In this case, for example, it is beyond dispute that “new [digital] copies [of the images at issue] ... were created in the process of’ Dayton both downloading the image files from other LimeWire users’ shared folders onto his own hard drive, and in turn saving some of those files onto CDs.[6] United States v. Guagliardo, 278 F.3d 868, 871 n. 3 (9th Cir.2002). In other words, those copies were created at the moment they were recorded on the hard drive and CDs. Consequently, it would have been impossible for those image files to have traveled in interstate commerce during the creation process, thus meaning that they could only be actionable under the majority’s interpretation of § 2252(a)(4)(b) if Dayton (or someone else) physically transported the hard drive or CDs containing them across state lines.[7] Given the force with which Con *604 gress has spoken on the issue of child pornography, that is surely not the result it intended.
The majority is mistaken in suggesting that its interpretation is mandated by our prior decision in United States v. Wilson, 182 F.3d 737 (10th Cir.1999). Wilson, which I authored, involved a different charge, and in turn a different jurisdictional element, than either of the counts at issue here. Specifically, the defendant in Wilson was convicted of “a single count of possessing three or more matters (i.e., ... ten computer diskettes) containing visual depictions ... of minors engaging in sexually explicit conduct which were produced using materials that had been mailed, shipped, or transported in interstate or foreign commerce, in violation of 18 U.S.C. § 2252(a)(4)(B) (1996).” 182 F.3d at 739-40. On appeal, the defendant argued that “the evidence presented at trial was insufficient to establish the jurisdictional element of the charged crime, i.e., that the visual depictions were produced using materials that had been mailed, shipped, or transported in interstate or foreign commerce.” Id. at 740. In addressing this issue, we noted that “the prosecution’s strategy at trial for proving the jurisdictional element was extremely vague” and “ever-shifting____” Id. at 742. We ultimately addressed and rejected each of those vague theories. We also noted, in passing, that one of the case agents testified at trial “that some of the images at issue originated from German magazines.” Id. at 744. In addition to noting that the prosecution failed to rely on this evidence at trial to prove the jurisdictional element, we emphasized that the agent “offered no explanation ... as to how those particular images found their way to the diskettes in defendant’s possession,” “[n]or did the prosecution otherwise attempt to outline the possible methods by which defendant could have obtained the files through interstate commerce....” Id. at 744. Thus, we “rejected] the possibility that [the agent’s] testimony regarding the origination of the images, standing alone, was sufficient to satisfy the jurisdictional element” for a charge brought pursuant to 18 U.S.C. § 2252(a)(4)(B), which required proof that the materials used to produce the pornographic depictions were transported in interstate or foreign commerce. Id.
*605 The majority in this case seizes on the following footnote in Wilson:
We offer the following example to demonstrate why [the defendant]^ testimony could not, by itself, satisfy the jurisdictional element. Imagine a person possesses a magazine and makes a color photocopy (copy # 1) of one of the images contained therein. Further imagine such person uses copy # 1 to make a second color photocopy (copy # 2). Although the magazine would be a “material” used to produce copy # 1, it would not be a “material” used to produce copy # 2. Thus, the fact that some of the images possessed by defendant originated at some point in German magazines does not demonstrate, without more, that the German magazines were actually “materials” used to produce the images possessed by defendant.
Id. at 744 n. 5. Contrary to the conclusion drawn by the majority, this footnote says nothing about the meaning of the statutory phrase “visual depiction.” Indeed, the interpretive question we now face regarding the meaning of that statutory phrase was neither argued nor considered in Wilson. Thus, the above-quoted footnote from Wilson must be read in proper context: it opined only that the German magazines cited by the case agent failed to qualify as “materials” used to produce the specific images possessed by the defendant— which, again, was our focus in this prosecution for violation of 18 U.S.C. § 2252(a)(4)(B). It did not, as suggested by the majority, mandate a particular interpretation of the statutory phrase “visual depiction” or require any type of proof of “interstate travel for the particular images at issue in the criminal prosecution.” Maj. Op. at 593 (emphasis in original).
As for the other decision relied on by the majority, United States v. Schaefer, 501 F.3d 1197 (10th Cir.2007), there is no indication that the parties or the panel therein considered the proper interpretation of the statutory phrase “visual depiction.” Indeed, the opinion does not even quote the statutory definition of the phrase, let alone attempt to decipher its meaning. Instead, it appears that the panel in Schaefer simply assumed, without directly deciding, that the phrase referred to the specific images possessed by the defendant. Having said that, however, the decision arguably supports, at least to a limited degree, the government’s proposed interpretation in this case. In particular, the Schaefer decision at one point states that, “on the[] facts [before it], the government was required to prove that any Internet transmissions containing child pornography that moved to or from [the defendant’s] computer crossed state lines.” 501 F.3d at 1202. Such proof, however, would not establish that the specific images possessed by the defendant (some of which were contained in “unallocated clusters” and in the “internet cache” on his hard drive, and some of which were contained on a CD) traveled in interstate commerce. Rather, such proof would establish that identical, prior generation copies of the same image traveled by way of the Internet to the defendant’s computer, where the copies at issue were then created (in the case of the images on his hard drive, by way of the computer’s internal operations, and in the case of the images on the CD, by subsequent action of the defendant in copying the images to the CD).[8] In the end, because Schaefer did not expressly consider the proper interpre *606 tation of the phrase “visual depiction,” and because any conclusions that can be drawn therefrom regarding that issue are inconsistent, I submit the best course (as other panels have done since its issuance) is to construe it as narrowly limited to its unique facts.[9] See United States v. Vigil, 523 F.3d 1258, 1266 (10th Cir.2008) (“Schaefer is limited to its facts-the government’s say so was not enough to prove that the Internet operates in interstate commerce, no matter how obvious.”).
Concluding, then, that the government’s proposed interpretation of the statutory phrase “visual depiction” is the proper one, I turn to the evidence presented by the government in this case to determine whether it was sufficient to satisfy the requisite jurisdictional elements. With respect to the distribution charge, the government presented evidence testimony from FBI Agent Joseph Cecchini that one of the video images that formed the basis of the charge was made in Richland, Washington. In my view, this evidence was clearly sufficient to establish the requisite interstate nexus. That is, taking this evidence in the light most favorable to *607 the government, with all reasonable inferences therefrom, a jury could conclude that an image created in the state of Washington necessarily crossed state lines before ultimately arriving on a computer in Oklahoma.[10] See United States v. Schene, 543 F.3d 627, 639 (10th Cir.2008) (holding that there was sufficient evidence to prove that a hard drive found in Oklahoma was a “material” that had traveled in interstate or foreign commerce upon proof that the hard drive was manufactured in Singapore). The same is true for the possession charge. As to that count, the government presented testimony from FBI agent Christopher Trifiletti that the images found on the CD in Dayton’s possession were originally produced in Paraguay. Thus, I reject Dayton’s assertion that the government’s jurisdictional proof was insufficient to support his convictions.

II. Jury instruction—distribution

Dayton also argues that the district court erred in instructing the jury on the element of distribution. “When reviewing claims of error in regard to jury instructions, we review the instructions as a whole de novo to ensure that the applicable law was correctly stated.... ” United States v. Allen, 603 F.3d 1202, 1213 (10th Cir.2010).
The district court defined the term “distribute” for the jury as follows:
In this case, to distribute means to deliver, transfer, disperse, or dispense to another person. You are instructed that if a person knowingly makes images available on a peer-to-peer file sharing network, such as Limewire, this is considered “distribution” of the images. In other words, the Government may meet its burden of proof on this element by showing that Defendant knowingly allowed others access to his Limewire shared folder.
ROA, Vol. 1, Part 2, at 240. In doing so, the district court relied on our decision in United States v. Shaffer, 472 F.3d 1219 (10th Cir.2007).
In Shaffer, the defendant was charged with distributing child pornography in violation of 18 U.S.C. § 2252A(a)(2) by “downloading] images and videos from a peer-to-peer computer network and storing] them in a shared folder on his computer accessible by other users of the network.” 472 F.3d at 1220-21. We rejected the defendant’s argument that to “distribute” requires a defendant to “actively transfer possession to another.” Id. at 1223. We held instead that the defendant “distributed” child pornography by allowing others access to download the child pornography files in his peer-to-peer program’s shared folder. Id. (“We have little difficulty in concluding that Mr. Shaffer distributed child pornography.... [H]e freely allowed [others] access to his computerized stash of images and videos and openly invited them to take, or download, those items.”).
Although Dayton contends the district court erred by instructing the jury according to Shaffer, and a correct instruction would have relied instead on Schaefer, I disagree. Schaefer, as already discussed, focused exclusively on the jurisdictional nexus (the interstate commerce element) for charges of receiving and possessing *608 child pornography. See Schaefer, 501 F.3d at 1198. Nothing therein addressed distribution of child pornography in general, or the definition of “distribution” in particular.
Dayton’s argument that the jury instruction “permitted a less stringent evidentiary foundation to prove the interstate commerce nexus,” Aplt. Br. at 62, is wholly without merit. Distribution and jurisdiction are independent elements: the government was required to prove that Dayton knowingly distributed the visual depictions and that those visual depictions had previously traveled in interstate or foreign commerce.[11] Notably, the district court in this case separately and clearly instructed the jury on both of those elements.
I would affirm Dayton’s convictions and sentence.

. The jurisdictional element of 18 U.S.C. § 2252(a)(4)(B) can be satisfied in an alternative manner, i.e., by proof that the visual depictions at issue were produced with materials that were mailed, shipped, or transported in interstate or foreign commerce. As the majority correctly notes, however, the indictment in this case did not rely on this alternative manner of proving the jurisdictional element.

. Although the majority concedes that our task is to "interpret statutes ... in a manner that effectuates Congress’s will,” Maj. Op. at 599 n. 18, it suggests that the inquiry is foreclosed, and Dayton’s jurisdictional challenge controlled entirely, by "our prior decisions in Wilson and Schaefer." Id. at 20 n. 10. I disagree. As discussed in greater detail below, neither Wilson nor Schaefer addressed the meaning of the statutory phrase "visual depiction.” Thus, neither is controlling.

.How this could ever be proven, we are left by the majority only to guess. Indeed, the only conceivable way that the precise copy possessed by the defendant could satisfy the jurisdictional nexus would be if it was physically transported (as it resides on some form of media) across state lines.

. The statutory definition of "visual depiction” applicable to Dayton’s case originated in 1996, as part of the Child Pornography Prevention Act of 1996. In late 2008, after Dayton was indicted, Congress amended this statutory definition to read:
"visual depiction” includes undeveloped film and videotape, data stored on computer disk or by electronic means which is capable of conversion into a visual image, and data which is capable of conversion into a visual image that has been transmitted by any means, whether or not stored in permanent format----
18 U.S.C. § 2256(5) (2010).

. In this regard, the government’s interpretation is analogous to the manner in which we interpret federal firearms offenses. It is well established in federal firearms cases that once a firearm has been shipped or transported in interstate or foreign commerce, the jurisdictional element of the statute is satisfied, and there is no necessity of proving that the firearm was so transported or shipped immediately prior to arriving in the defendant’s possession, or that the defendant himself transported or shipped the firearm in interstate commerce. E.g., Barrett v. United States, 423 U.S. 212, 224, 96 S.Ct. 498, 46 L.Ed.2d 450 (1976) ("conclud[ing] that [18 U.S.C.] § 922(h) covers the intrastate receipt ... of a firearm that previously had moved in interstate commerce.”).

. Federal Bureau of Investigation (FBI) Agent Joseph Cecchini testified at trial that at the time the search warrant for Dayton’s home was executed, he and another officer interviewed Dayton. According to Cecchini, Dayton admitted he was the subscriber to the Internet account at issue and understood the Internet was "a worldwide entity and information travels worldwide.” ROA, Vol. 2, Part 1 at 134. In turn, Cecchini testified, Dayton readily admitted that he used the Internet "for downloading files, movies, pictures, that kind of stuff,” id., and had "been downloading child pornography and using LimeWire for about three months prior to us being there.” Id. at 135. When asked by Cecchini what he did with the images of child pornography after he downloaded them from the Internet, Dayton "said that he had them for a while. He said some of them, he deleted. He said some of them, he kept and some of them he put onto a DVD or DVDs.” Id. at 136.

. The majority asserts this conclusion "is specious at best, and is belied by our own case law.” Maj. Op. at 594 n. 14. But the only decision the majority cites in support is its own recent majority opinion in United States v. Dobbs, 629 F.3d 1199 (10th Cir.2011). Dobbs, according to the majority, "acknowledged ... the possibility that a computer user who knowingly accesses images of child pornography online may be found guilty of receipt under 18 U.S.C. § 2252(a)(2), so long as in doing so he had 'the ability to exercise control over them by, for example, clicking on or enlarging them.' ” Maj. Op. at 594 n. 14 (quoting Dobbs, 629 F.3d at 1203-204). The problem, however, is that the majority decision in Dobbs never delved into the issues we now face, i.e., what is a "visual depiction,” and how, precisely, can a visual depiction be shipped or transported in interstate commerce. Instead, the majority decision in Dobbs focused exclusively on whether the defendant in that case "knowingly received” the images of child pornography that were found in the cache of his computer. 629 F.3d at 1203-204. Thus, the majority decision in Dobbs tells us nothing about how the jurisdictional element in this or similar cases can be satisfied.
To be sure, the majority in this case now suggests that, "[h]ad it been shown in Dobbs *604 that the defendant knowingly viewed the[] [charged] images on his screen and had the ability to manipulate them, [its] decision would have turned on whether the government also could show that those images arrived on his screen by virtue of an Internet transmission [that] moved the images across state lines, regardless of whether a distinct file was created on the defendant’s computer.” Maj. Op. at 594 n. 14 (internal quotation marks and citation omitted). But the majority fails to explain how, precisely, that could be so under its interpretation of the phrase "visual depiction.” If, as the majority concludes, a "visual depiction” refers narrowly to a specific copy of • an image found in the defendant's possession, the defendant’s online activity in Dobbs simply could not have, for the reasons discussed above, satisfied the jurisdictional element.
Only my dissenting opinion in Dobbs directly addressed the question of how the jurisdictional element in a receipt case under 18 U.S.C. § 2252(a)(2) can be proven. And, consistent with my position here, I effectively concluded in Dobbs that the original version of an image of child pornography, as well as all subsequent generations of that same image, constitute the same "visual depiction” for purposes of prosecution under § 2252(a)(2). Consequently, I concluded that the government’s proof that the images ultimately found in the cache of the defendant’s computer were created out-of-state was sufficient to satisfy § 2252(a)(2)’s jurisdictional nexus. 629 F.3d at 1219 ("I conclude that because a reasonable jury could find that the two images at issue traveled in interstate commerce at some point before arriving on Dobbs’s computer, there was sufficient evidence to support the jurisdictional element.”).

. In short, Schaefer is internally inconsistent: on the one hand, it states that the specific images possessed by the defendant must have traveled in interstate commerce; on the other hand, it suggests that the interstate nexus could be satisfied by proof that identical, pri- or-generation copies of the images at issue traveled across state lines to the defendant’s *606 computer. Unfortunately, neither Schaefer nor the majority opinion in this case acknowledge this inconsistency.
Moreover, although the majority suggests that the Ninth Circuit agreed with Schaefer when it "recently interpreted essentially identical [jurisdictional] language in a pre-2008amendment child pornography statute," Maj. Op. at 593 n. 11, that is only half-right. To be sure, the Ninth Circuit in United States v. Wright, 625 F.3d 583 (9th Cir.2010), agreed with Schaefer that a defendant’s mere use of an "interstate facility” is insufficient to satisfy jurisdictional language that refers to child pornography or visual depictions being mailed, or transported or shipped in interstate or foreign commerce. Id. at 594. But that is the end of the similarities between the two cases. The remainder of Wright's jurisdictional discussion focused on the unique language of the statutoiy provision the defendant in that case was charged with violating, i.e., the pre-2008 version of 18 U.S.C. § 2252A(a)(l). Unlike the receipt, possession, and distribution provisions of § 2252 and § 2252A, which prior to 2008 required proof that the visual depictions or child pornography at issue ”ha[d] been mailed, or ha[d] been shipped or transported in interstate commerce,” 18 U.S.C. § 2252(a)(2), the pre-2008 version of § 2252A(a)(l) required proof that the defendant himself "knowingly mail[ed], or transported] or ship[ped] in interstate or foreign commerce ... any child pornography.” Thus, in short, Wright said nothing about the proper interpretation of the statutory phrase "visual depiction,” or about the jurisdictional elements of § § 2252(a)(2) and (a)(4)(B).

. Having said that, I submit that the instant case is a suitable candidate for reconsidering, en banc, the jurisdictional holdings contained in Schaefer (the government in Schaefer sought only panel, but not en banc, rehearing). As exemplified by this case and Dobbs, the jurisdictional holdings in Schaefer are, in my view, improperly hampering the prosecution of child pornography cases in this circuit. For example, the government in this case and Dobbs was needlessly prevented, based upon the holdings in Schaefer, from relying on numerous additional images of child pornography possessed by the defendants. In Dobbs, the government's computer forensic specialist testified that the defendant received approximately 159 images of child pornography. The government's trial evidence in turn focused on seventeen of those images. Ultimately, however, the trial court in Dobbs ruled, based upon Schaefer, that there was sufficient evidence of interstate transport with respect to only two of the images. Although this ruling did not result in the dismissal of either of the two counts alleged against the defendant, it significantly narrowed the scope of each of those counts.
Although the majority suggests there is no need for any en banc proceedings because "Congress amended [18 U.S.C. § 2252] in 2008, effectively broadening [its] jurisdictional language,” Maj. Op. at 599 n. 18, the fact remains that the statute, as currently written, continues to utilize the phrase "visual depiction.” Thus, Schaefer and the instant case will, until revisited and reversed by the entire court, continue to impact future child pornography prosecutions in this circuit.

. Although the government presented evidence of three other video images in support of the distribution charge, it is unnecessary for me to determine whether the government’s evidence sufficiently established that those images also traveled in interstate or foreign commerce. See Griffin v. United States, 502 U.S. 46, 56-57, 112 S.Ct. 466, 116 L.Ed.2d 371 (1991) (holding that when an indictment charges "several acts in the conjunctive, ... the verdict stands if the evidence is sufficient with respect to any one of the acts charged”) (internal quotation marks omitted).

. Dayton appears to suggest that the government was required to prove that he distributed the files in interstate or foreign commerce. However, that is not what the statute requires. Section 2252(a)(2) prohibits "knowingly ... distributing ... any visual depiction that has been mailed, or has been shipped or transported in interstate or foreign commerce____" (emphasis added). Thus, it is not necessary that Dayton's distribution was itself in interstate or foreign commerce.