**UNITED STATES of America**

**v.**

**Francesco CAPAROTTA, Defendant.**

**No. 11–CR–817 (S–1) (KAM).**

United States District Court,
E.D. New York.

Sept. 10, 2012.

Martin G. Goldberg, Franklin Square, NY, for Defendant.

## *MEMORANDUM AND ORDER*

MATSUMOTO, District Judge:

Defendant Francesco Caparotta ("defendant") is charged with distributing, receiving, and possessing child pornography in violation of 18 U.S.C. §§ 2252(a)(2) and (a)(4)(B). Presently before the court is defendant's motion to (1) dismiss the charges for distribution of child pornography; (2) inspect the grand jury minutes; and (3) declare unconstitutional the five-year mandatory minimum sentence for receipt of child pornography. (*See* ECF No. 30, Defendant's Argument ("Def. Arg.").) [1] The government opposes defendant's motion (*see* ECF No. 32 ("Gov't Opp'n")), and defendant filed a reply brief (*see* ECF No. 33 ("Def. Reply")). Oral argument on defendant's motion was held on September 7, 2012. Having reviewed the parties' submissions and the relevant case law, for the reasons set forth below, defendant's motion is denied in its entirety.

## *BACKGROUND*

The facts surrounding the government's investigation of defendant and his arrest do not appear to be disputed by the defendant. According to the government and the complaint filed in this case (*see* ECF No. 1, Complaint ("Compl.")), on August 15, 2011, a Special Agent (the "Agent") of the Federal Bureau of Investigation ("FBI") working in an undercover capacity signed into a publicly available peer-to-peer file-sharing program (a "P2P program") via an internet-connected computer

Douglas M. Pravda, United States Attorney's Office, Brooklyn, NY, for United States of America.

---

1. Defendant also made several discovery motions, which have since been resolved. (*See* Minute Entry dated September 7, 2012.)

at an FBI office in Florida. (*Id.* ¶ 3.) P2P programs, which are used largely for sharing of digital music, images, and video, are "so called because users' computers communicate directly with each other, not through central servers." *MGM Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 919–20, 125 S.Ct. 2764, 162 L.Ed.2d 781 (2005).[2] Generally, a P2P program user can search for files made available by all other users, browse all the files made available by a particular user, and download desired files. *See United States v. Chiaradio*, 684 F.3d 265, 271 (1st Cir.2012) (describing Lime-Wire). A P2P program user can make his files accessible for browsing and downloading by other users by placing such files into a designated folder (the "shared folder") that will automatically share its contents with the network. *Id.*

After logging on to the P2P program, the Agent conducted a search for child pornography and received a response from an Internet Protocol address ("IP address") associated with a computer later determined to be located at defendant's residence (the "Computer"). (Compl. ¶¶ 4, 6–7.) Because the Computer had been configured to permit browsing and downloading of its shared folder by other users of the P2P program, the Agent was able to connect with the Computer and obtain a list of the files in its shared folder. (*Id.* ¶¶ 4–5.) After determining that several files in the shared folder had filenames consistent with child pornography, the

Agent downloaded nine image files and one video file from the Computer's shared folder, all of which appeared to be child pornography.[3] (*Id.* ¶ 5.)

On October 27, 2011, the government executed a search warrant for defendant's residence—the location of the Computer—during which the defendant was present, and the defendant admitted to downloading child pornography for fifteen years, including via a P2P program called "Bearshare." (*Id.* ¶ 8.) The defendant was also presented with a list of 105 files available for download from his shared folder, and the defendant confirmed that he believed he downloaded those files from Bearshare and that the majority of the files contained child pornography. (*Id.*)

The defendant was arrested on November 10, 2011, and a Superseding Indictment returned on April 12, 2012 charged him with (1) ten counts of Distribution of Child Pornography in violation of 18 U.S.C. § 2252(a)(2), presumably for the ten files downloaded by the Agent [4], (2) six counts of Receipt of Child Pornography in violation of 18 U.S.C. § 2252(a)(2), and (3) one count of Possession of Child Pornography in violation of 18 U.S.C. § 2252(a)(4)(B). (*See* ECF No. 25, Superseding Indictment.) The court will now address defendant's motion.

## DISCUSSION

### I. Dismissal of the Distribution

---

2. Common examples of P2P programs include GigaTribe, LimeWire, KaZaA, BearShare, and Gnutella.

3. Typically, when a user of a P2P program tries to download a file, "the program seeks out all the users who are sharing the same file and downloads different pieces of that file from multiple locations in order to optimize download speed." *Chiaradio*, 684 F.3d at

271. Here, however, the Agent was utilizing a version of a P2P program that was enhanced to limit downloads from a single source, such as the defendant's computer. (Compl. ¶ 4.)

4. The first count for distribution involves a video file and the remaining nine counts involve image files, the same composition of files downloaded by the Agent. (Compl. ¶ 5.)

### Charges[5]

■ Defendant argues that he cannot be charged with "distribution" of child pornography because the Agent downloaded the files at issue from the shared folder on defendant's computer without the defendant's knowledge of or active participation in the download.[6] (*See* Def. Arg. at 6–8.) In opposition, the government notes that, although the Second Circuit has not addressed the meaning of "distributes" in Section 2252(a)(2), other Circuit courts "have held that having pornographic material in a file-sharing server constitutes distribution." (Gov't Opp'n at 4 n.1 (collecting cases).) The question before the court is thus purely a legal one: whether a defendant who places and maintains electronic files containing child pornography in a shared folder accessible to others via a P2P program on the internet can be charged with "distributing" child pornography under Section 2252(a)(2), where a third party downloads those files without the defendant's active participation or knowledge.[7] For the reasons discussed

below, the courts answers this question in the affirmative.

### A. Plain Meaning of "Distributes"

" 'Statutory analysis necessarily begins with the plain meaning of a law's text and, absent ambiguity, will generally end there.' " *Cruz–Miguel v. Holder*, 650 F.3d 189, 195 (2d Cir.2011) (quoting *Dobrova v. Holder*, 607 F.3d 297, 301 (2d Cir.2010)); *see K Mart Corp. v. Cartier*, 486 U.S. 281, 291–92, 108 S.Ct. 1811, 100 L.Ed.2d 313 (1988). In conducting such an analysis, a court should " 'consider[ ] the ordinary or natural meaning of the words chosen by Congress, as well as the placement and purpose of those words in the statutory scheme.' " *Cruz–Miguel*, 650 F.3d at 195. Section 2252(a)(2) authorizes the punishment of:

> Any person who knowingly receives, or distributes, any visual depiction using any means or facility of interstate or foreign commerce ... by any means including by computer ... if (A) the producing of such visual depiction in-

---

5. Although the defendant moves to dismiss the distribution charges in connection with his motion to inspect the grand jury minutes, which, as discussed *infra*, is denied, the court finds that it is necessary to address dismissal of the distribution charges prior to defendant proceeding to a guilty plea or trial in light of the uncertainty in this Circuit regarding the definition of "distributes" in Section 2252(a)(2). *See Bousley v. United States*, 523 U.S. 614, 618, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998) ("We have long held that a plea does not qualify as intelligent unless a criminal defendant first receives 'real notice of the true nature of the charge against him, the first and most universally recognized requirement of due process.' " (quoting *Smith v. O'Grady*, 312 U.S. 329, 334, 61 S.Ct. 572, 85 L.Ed. 859 (1941))); (Def. Reply at 1 ("The question then becomes what definition will this Court be using should this case proceed to trial. Due process requires that defendant should know prior to commencing trial what he is being charged with...."))). Additionally, because

resolution of this issue essentially moots defendant's motion to inspect the grand jury minutes, the court addresses this issue first in the interest of judicial efficiency.

6. There is no dispute that the files at issue constituted a "visual depiction" that was produced "involv[ing] the use of a minor engaging in sexually explicit conduct." 18 U.S.C. § 2252(a)(2)(A)-(B). For simplicity's sake, the court will refer to the files at issue as child pornography.

7. The defendant does not dispute that "distribution includes sending pornography to civilians as well as undercover agents." (Def. Reply at 2.) Therefore, the fact that the Agent—rather than a civilian—downloaded the child pornography files has no bearing on this issue. *See Chiaradio*, 684 F.3d at 282 ("The fact that distribution was effected to an undercover law enforcement officer does not mitigate the fact that distribution occurred.").

volves the use of a minor engaging in sexually explicit conduct; and (B) such visual depiction is of such conduct.

18 U.S.C. § 2252(a)(2). Because the statute does not contain a definition of "distributes," the court considers the ordinary, common meaning of "distribute," which, *inter alia,* includes "[t]o apportion; to divide among several," "[t]o deliver," and "[t]o spread out; to disperse." Black's Law Dictionary (9th ed.2009); *United States v. Lorge,* 166 F.3d 516, 518 (2d Cir.1999) (interpreting "distribution" under United States Sentencing Guidelines Manual § 2G2.2(b)(2) [now § 2G2.2(b)(3) ] and considering Webster's Third New International Dictionary (unabridged 1981) "defining 'distribution' as, *inter alia,* 'a spreading out or scattering over an area or throughout a space' "); *see also Chiaradio,* 684 F.3d at 281–82 ("The word 'distribution' is not defined in [Section 2252(a)(2) ] itself, but the plain meaning of distribution is '[t]he act or process of apportioning or giving out.' " (citing Black's Law Dictionary 543 (9th ed.2009))); 3 L. Sand *et al.,* Modern Federal Jury Instructions–Criminal, ¶ 62.02, Instr. 62–15 (stating that "distribute" under Section 2252(a)(2) "means to disseminate or transfer possession to another person."); *cf.* 21 U.S.C. § 802(11) (stating that " 'distribute' means to deliver" for purposes of drug offenses).

Considering the plain meaning of "distribute," the court finds that defendant's placing of child pornography files in a shared folder accessible to others via a P2P program on the internet constitutes "distribution" under Section 2252(a)(2) to persons to share and download. By placing the child pornography files in his shared folder, the defendant distributed those files to any person using the same P2P program, thereby "spreading," "scattering," "disseminating," "delivering," or "transferring possession" of those files to any individual, including the Agent, that

downloaded those files. The fact that the defendant did not transfer the files to a *specific* person or that the Agent had to download the files from the defendant's shared folder before possessing or viewing them does not change the nature of defendant's placing of the files into the shared folder from one of distribution to something else.

Moreover, the fact that the Agent could download the files without the defendant's knowledge or active participation is irrelevant because, by actively placing the child pornography files into his shared folder, the defendant deliberately distributed to all users of the P2P program access to those files and forfeited control over who could download them. Indeed, the use of a shared folder on a P2P program is more effective at "distributing" child pornography files than more traditional electronic methods such as email, chat rooms, or a direct private transfer—which require the distributor to actively initiate and monitor the transfer of files-because the same files can be distributed to multiple individuals using the P2P program by the click of a button and without the distributor's participation. *See United States v. Sewell,* 513 F.3d 820, 822 (8th Cir.2008) (distinguishing between distribution of child pornography in a chat room and on a P2P program).

**B. Other Circuit Court Interpretations of "Distribute"**

As defendant concedes, although the Second Circuit has not addressed this issue, other Circuit courts, including the First, Eight, Tenth, and Eleventh Circuits, that have addressed distribution under Section 2252(a)(2) have adopted the view that placing child pornography on a P2P program accessible to other users constitutes "distribution." *See Chiaradio,* 684 F.3d at 282 (upholding conviction for distribution under analogous facts on the ba-

sis that "[w]hen an individual consciously makes files available for others to take and those files are in fact taken, distribution has occurred. The fact that the defendant did not actively elect to transmit those files is irrelevant."); *United States v. Dayton*, No. 09–5022, 2012 WL 2369328, at *3, 2012 U.S.App. LEXIS 13283, at *9–10 (10th Cir. June 25, 2012) (unpublished) (upholding jury instruction stating "if a person knowingly makes images available on a peer-to-peer file sharing network ... this is considered 'distribution' of the images. In other words, the Government may meet its burden of proof on this element by showing that Defendant knowingly allowed others access to his [P2P program] shared folder.") (citing *United States v. Shaffer*, 472 F.3d 1219, 1223 (10th Cir.2007)); *United States v. Collins*, 642 F.3d 654, 656–57 (8th Cir.2011) (upholding conviction for attempted distribution where defendant had child pornography saved under his screen name on a P2P program); *United States v. DeGennaro*, 309 Fed.Appx. 350, 351–52 (11th Cir.2009) (upholding conviction for distribution where officer patrolling a P2P program downloaded at least six files containing child pornography from an IP address traced to an account owned by defendant); *see also Sewell*, 513 F.3d at 822 (finding that placing child pornography images in a shared folder on a P2P program constitutes an offer to distribute under 18 U.S.C. § 2251(d)(1)(A)).[8]

Moreover, although not explicitly addressing "distribution" under Section 2252(a)(2), the Third, Sixth, and Seventh Circuits have strongly suggested that they would adopt a similar view. *See United States v. Schade*, 318 Fed.Appx. 91, 94–95 (3d Cir.2009) (non-precedential) ("It would be eminently reasonable for the jury to have concluded that [defendant] aided and abetted the transportation of a visual depiction of a minor engaged in sexual activity [under Section 2252(a)(1) ] by making the child pornography file available in the 'My Downloads' folder for any part of it to be downloaded, resulting in the utilization of that file by another user of [the P2P program] seeking to download the complete video."); *United States v. Darway*, 255 Fed.Appx. 68, 71 (6th Cir.2007) (noting that "[s]everal courts have held that maintaining files in an accessible public folder constitutes distribution"); *United States v. Carani*, 492 F.3d 867, 876 (7th Cir.2007) (agreeing with *Shaffer* and stating that "[t]he notion that [defendant] could knowingly make his child pornography available for others to access and download without this qualifying as 'distribution' does not square with the plain meaning of the word."). Importantly, no Circuit court has found the opposite—that the placement of files in a shared folder accessible via a P2P program does not as a matter of law constitute "distribution" under Section

---

**8.** *See also United States v. Lavota*, No. SA–11–CR–84–U.S. Dist. LEXIS 142882, at *3 (W.D.Tex. Dec. 12, 2011) (finding guilty of distribution where defendant used a P2P program to make pornography images available to other users and a law enforcement downloaded an image from the defendant's computer); *United States v. Abraham*, No. 05–344, 2006 WL 3052702, at *8, 2006 U.S. Dist. LEXIS 81006, at *22 (W.D.Pa. Oct. 19, 2006) ("find[ing] that the defendant distributed a visual depiction when as a result of the defendant's installation of an internet peer-to-peer

video file sharing program on his computer, a Pennsylvania state trooper was able to download the child pornography from the defendant's computer to the trooper's computer."); 3 L. Sand et al., Modern Federal Jury Instructions–Criminal, ¶ 62.02, Instr. 62–15, Comment ("[K]eeping depictions in a peer-to-peer file sharing program application where it is available for downloading to other subscribers of the application is a 'distribution' when another person does in fact download the depiction.").

2252(a)(2).[9]

The Tenth Circuit's decision in *Shaffer*, which appears to be the most cited case with respect to this issue, is particularly analogous to the facts of this case. In *Shaffer*, like here, the defendant argued that he could not, as a matter of law, "distribute" child pornography under 18 U.S.C. § 2252A(a)(2)—an analogous statute[10]—when he stored files containing child pornography in a shared folder on his computer accessible to other users of a P2P program, including a law enforcement agent that downloaded those files. 472 F.3d at 1220–22. After recognizing that the statute contained no definition of "distribute" and considering dictionary definitions of "distribute," the court upheld defendant's conviction for distribution, analogizing a P2P file-sharing network to a self-service gas station:

> We have little difficulty in concluding that Mr. Shaffer distributed child pornography in the sense of having 'delivered,' 'transferred,' 'dispersed,' or 'dispensed' it to others. He may not have actively pushed pornography on [P2P program] users, but he freely allowed them access to his computerized stash of images and videos and openly invited them to take, or download, those items. It is something akin to the owner of a self-serve gas station. The owner may not be present at the station, and there may be no attendant present at all. And neither the owner nor his or her agents may ever pump gas. But the owner has a roadside sign letting all passersby know that, if they choose, they can stop and fill their cars for themselves, paying at the pump by credit card. Just because the operation is self-serve, or in Mr. Shaffer's parlance, passive, we do not doubt for a moment that the gas station owner is in the business of 'distributing,' 'delivering,' 'transferring' or 'dispersing' gasoline; the *raison d'etre* of owning a gas station is to do just that. So, too, a reasonable jury could find that Mr. Shaffer welcomed people to his computer and was quite happy to let them take child pornography from it.

*Id.* at 1223–24. Based on this reasoning and the decisions of the other Circuit courts discussed above, the court rejects defendant's argument that his conduct here cannot, as a matter of law, constitute distribution under Section 2252(a)(2).

## C. Defendant's Arguments

Defendant attempts to argue against this result by using three analogies to support a slippery-slope argument, contending that "[i]f the other circuits are

**9.** Additionally, several Circuit courts have concluded that the use of a P2P program by a defendant under circumstances similar to those here is a sufficient basis to impose a sentencing enhancement for "distribution" of child pornography under United States Sentencing Guidelines Manual § 2G2.2(b)(3), which defines "distribution" as "any act, including possession with intent to distribute, production, advertisement, and transportation, related to the transfer of material involving the sexual exploitation of a minor . . . . includ[ing] posting material involving the sexual exploitation of a minor on a website for public viewing. . . ." *See, e.g., United States v. Layton*, 564 F.3d 330, 335 (4th Cir.2009) ("We concur with the Seventh, Eighth, and Eleventh Circuits and hold that use of a peer-to-peer file-sharing program constitutes 'distribution' for the purposes of U.S.S.G. § 2G2.2(b)(3)(F)."); *see also Darway*, 255 Fed.Appx. at 71; *Carani*, 492 F.3d at 876; *United States v. Mathenia*, 409 F.3d 1289, 1290 (11th Cir.2005).

**10.** "[T]here is no material difference between the distribution component of § 2252A(a)(2) and that element of [defendant's] statute of conviction—§ 2252(a)(2)." *See Dayton*, 2012 WL 2369328, at *3 n. 3, 2012 U.S.App. LEXIS 13283, at *10–11 n. 3.

correct and having pornography in a file sharing program is sufficient to constitute distribution," then (1) "having pornography on a table near to a window would also be distribution since someone walking by might look in and see it"; (2) "discarding pornographic materials in a garbage can could become distribution since someone collecting soda cans might open up the garbage bag and view the pornography"; and (3) "storing material in a sealed storage locker could result in distribution since if the owner of the locker fails to pay the rental fee the locker could be sold and the pornography seen by the purchaser." (Def. Arg. at 8.)

These analogies are unavailing for several reasons. First, the initial actor's conduct in each analogy cannot constitute "distribution" under any meaning of the word. Unlike placing a file in a shared folder on a P2P program, the entire purpose of which is to share electronic files by enabling other users to search for, download, and take possession of a copy of the files, placing pornography on a table next to a window does not permit a passerby to take possession of the pornography.[11] Similarly, the act of discarding pornography in the garbage cannot constitute "distribution" because such an act leads to disposal of the pornography, not to its distribution. The fact that someone may happen to view the pornography on its way to the landfill does not change the nature of the initial act into one of distribution. Finally, the act of placing pornography in a sealed locker cannot constitute distribution simply because, at some unknown later point in time, another person may come into possession of the pornography due to the locker owner's possible nonpayment of the rental fee. Indeed, the act of securing the pornography in a sealed locker is at odds with the plain, ordinary meaning of "distribute" previously discussed.

Second, as demonstrated above, in each of the analogies it is the fortuitous conduct of third parties rather than that of the initial actor that leads to distribution of the pornography. In this case, however, it is the defendant who is the initial actor and his placement of child pornography files in his shared folder on a P2P program—which is specifically utilized to share with others the ability to search for and download electronic files—directly "distributes" the files to other individuals who may download them.

Third, unlike a P2P program, the initial actor in each of defendant's analogies is placing the pornography in a location in which no reasonable person would seek pornography (i.e. a table near a window inside a premises on presumably private property, a garbage can, and a sealed locker). Similar to the Tenth Circuit's analogy to a self-service gas station, perhaps an apt analogy for a P2P program is if the defendant operated a wing of a public library, which is where the public has free access to books, magazines, and videos, and his wing enabled patrons to indefinitely check out items using an electronic kiosk. Surely if defendant decided to dedicate one section of the wing to child pornography and a patron checked out a video from that section using the electronic kiosk, it would constitute "distribution" under the statute regardless of whether the defendant was present or actively participated in the transaction.

Defendant's analogies also fail when viewed in light of the statute's requirement

---

11. Of course, the passerby may take possession by seeking the owner's consent or by climbing through the window and simply taking the pornography, the latter of which would likely constitute burglary and theft.

that a defendant *"knowingly* ... distribute[ ]" child pornography. 18 U.S.C. § 2252(a)(2) (emphasis added). Without additional facts demonstrating an intent to "knowingly" distribute child pornography, a defendant could not be found guilty of distribution for putting child pornography on a table, throwing it in the garbage, or securing it in a locker.

In contrast to defendant's analogies, here, as discussed in *Chiaradio, Shaffer,* and several of the other Circuit cases cited above, a reasonable jury could infer that the defendant "knowingly" distributed child pornography files by placing them in a shared folder designed to permit searching and downloading of those files by all users of a P2P program. Defendant is certainly free to argue to a jury that he did not have the requisite knowledge because he was not computer savvy and did not know that other users had access to his shared folder, because the particular P2P program he was using automatically placed files he downloaded into his shared folder, or for some other reason. This does not change the fact, however, that the placement of child pornography in a shared folder on a P2P program *can* constitute "distribution" for purposes of Section 2252(a)(2).

Finally, defendant urges this court to adopt Judge Jack Weinstein's conclusion in *United States v. C.R.,* 792 F.Supp.2d 343 (E.D.N.Y.2011)—the only case defendant cites in support of his position—that Section 2252(a)(2) "require[s] both 1) an active intention to give or transfer a specific visual depiction to another person and 2) active participation in the actual delivery." *Id.* at 355; *see id.* at 486 ("Proof of distribution requires action by the defendant. Material elements include: 1) an intent of the defendant to have some person receive a child pornography image; and 2) the transmission by the defendant of the im-

age to a person."). In *C.R.,* Judge Weinstein accepted a guilty plea to a distribution charge under similar circumstances, where a law enforcement agent downloaded a child pornography file from the defendant's shared folder via a P2P program when the defendant was not home, and the defendant testified that he did not intend for anyone to download the file. *Id.* at 352, 354. Judge Weinstein's interpretation of "distribute" was relevant to his ultimate finding that the five-year mandatory minimum term of imprisonment for distribution was cruel and unusual punishment under the Eighth Amendment when applied to the defendant-a "developmentally immature young adult." *Id.* at 506–11. This decision has been appealed by the government and is pending before the Second Circuit.

Judge Weinstein arrived at his interpretation of "distribute" in Section 2252(a)(2) "[a]fter examining the statute and dictionary definitions" of the term and without discussing any case law. *Id.* at 355. Specifically, he explained that "[d]ictionary definitions establish that 'to distribute' is 'an active not a passive verb,'" and that "distribute" has "two subdivisions": "One, he intends to distribute, he designs, intends; and two, he actually succeeds in distributing a communication, namely the visual depiction; there must be a communicator, namely the defendant [ ] and a communicant, somebody who actually received it." *Id.* at 353 (internal quotation marks omitted). This court does not disagree that distribution under Section 2252(a)(2) requires an intention to give or transfer child pornography to at least one other person, but does not decide if another person must actually download or obtain the child pornography from the defendant, as defendant here concedes that an agent obtained child pornography from his computer.

The first requirement—the intent element—is explicitly included in the statute by the inclusion of the adverb "knowingly," which modifies "distributes." *See* 18 U.S.C. § 2252(a)(2). Where this court most respectfully disagrees with Judge Weinstein is the second requirement as to what constitutes a successful distribution. Judge Weinstein requires a defendant's "active participation in the actual delivery" of a child pornography file to another person that goes beyond placing the file in a shared folder on a P2P program, *C.R.*, 792 F.Supp.2d at 355, which would preclude a finding of distribution where, like here, a third party downloaded the file from the defendant's shared folder without defendant's active participation or knowledge. In contrast, this court finds that, where a defendant places child pornography in a shared folder via a P2P program, a distribution has occurred.

Judge Weinstein's incorporation of an additional requirement into the statute—active participation by the defendant in the actual delivery of child pornography to another person—is not supported by a plain reading of Section 2252(a)(2), which does not contain any requirement that a defendant intend to distribute child pornography to a *specific* person or *actively* participate in the distribution. The statute only requires that a defendant "knowingly ... distributes" the child pornography. 18 U.S.C. § 2252(a)(2). Indeed, it would be an anomalous result under the plain meaning of the statute if a defendant cannot be found to have distributed child pornography even where a defendant knowingly made child pornography files available for sharing and downloading and those files are then downloaded. This court's interpretation of "distribute" is consistent with other Circuit and district court decisions, keeps pace with recent technology that has enormously increased the ways that child pornography can be created, accessed, and

distributed, and is consistent with Section 2252's "broad and general purpose of facilitating the prosecution of individuals who are involved with child pornography." *United States v. Mohrbacher*, 182 F.3d 1041, 1049 & n. 10 (9th Cir.1999); *see also* Adam Walsh Child Protection and Safety Act of 2006, Pub.L. No. 109–248, § 501, 120 Stat. 587, 623 (2006) ("The advent of the Internet has greatly increased the ease of transporting, distributing, receiving, and advertising child pornography in interstate commerce.").

■ For the reasons discussed above, in light of the plain meaning of the word "distributes" in the text of the statute and the overwhelming authority from other Circuit courts, the court finds that a defendant who places files containing child pornography in a shared folder accessible to others via a P2P program on the internet can be charged with "distribution" under Section 2252(a)(2). Accordingly, defendant's motion to dismiss the distribution counts of the Superseding Indictment is denied.

## II. Inspection of the Grand Jury Minutes

■ "The standard for granting a motion to inspect proceedings before a grand jury is very high: The Supreme Court consistently [has] recognized that the proper functioning of our grand jury system depends upon the secrecy of grand jury proceedings." *United States v. Hunt*, No. 05 Cr. 395(DAB), 2006 WL 2613754, at *10, 2006 U.S. Dist. LEXIS 64887, at *30 (S.D.N.Y. Sept. 6, 2006) (internal quotation marks omitted); *see Douglas Oil v. Petrol Stops Northwest*, 441 U.S. 211, 218, 99 S.Ct. 1667, 60 L.Ed.2d 156 (1979). As defendant recognizes (Def. Arg. at 5–6), he "must demonstrate a 'particularized need' when seeking grand jury materials, includ-

ing legal instructions given to the grand jury." *United States v. Paredes–Cordova,* No. S1 03 Cr. 987, 2009 WL 1585776, at *2, 2009 U.S. Dist. LEXIS 52415, at *5 (S.D.N.Y. June 8, 2009); *see also United States v. Persico,* 447 F.Supp.2d 213, 219 (E.D.N.Y.2006) ("With certain very limited exceptions, grand jury minutes are generally secret. To overcome the presumption of secrecy, a defendant must demonstrate a 'particularized need' that outweighs the need for secrecy." (citation omitted) (quoting *United States v. Moten,* 582 F.2d 654, 662 (2d Cir.1978))).

Defendant seeks inspection of the grand jury minutes to determine whether the grand jury "was improperly charged as to the meaning of distribution" under Section 2252(a)(2), and if so, to determine whether there was any evidence of "actual distribution" presented to the grand jury to support the ten distribution counts of the Superseding Indictment. (Def. Arg. at 8.) Specifically, defendant, on information and belief, contends the grand jury was improperly charged "that having porno-

graphic material in a file-sharing server constituted distribution" where it was accessible to and downloaded by a government agent as described in the Complaint. (Def. Arg. at 6; Reply at 2.)

Assuming that such a charge was given to the grand jury, as discussed *supra,* such a charge would not be erroneous because the defendant's act of making child pornography files available for downloading by others on a P2P program can constitute "distribution" under Section 2252(a)(2). As the defendant offers no other basis for inspecting the grand jury minutes, defendant's motion to inspect the grand jury minutes is denied.

## III. Constitutionality of Five–Year Mandatory Minimum for Receiving Pornography under Section 2252(a)(2).

 Defendant argues that the five-year mandatory minimum sentence for receipt of child pornography under Section 2252(b)(1) is unconstitutional on its face.[12]

12. Although defendant states that he "is at the low end of the child pornography world" (Def. Arg. at 10), defendant makes this motion prior to entering a guilty plea or proceeding to trial and prior to his sentencing. Because no Presentence Report has been issued and there are no facts pertaining to defendant's sentencing before the court, a decision as to whether the five-year mandatory minimum sentence is unconstitutional under the Eighth Amendment as cruel and unusual punishment as applied to him is not yet ripe for adjudication. In any event, any Eighth Amendment challenge is unlikely to succeed. *See United States v. Puglisi,* 458 Fed.Appx. 31, 35 (2d Cir.2012) (summary order) ("This Court and others have regularly rejected Eighth Amendment challenges to child pornography sentences." (collecting cases)); *United States v. Steele,* 390 Fed.Appx. 6, 17 (2d Cir.2010) (summary order) ("[T]he Cruel and Unusual Punishment Clause 'forbids only extreme sentences that are grossly disproportionate to the crime, and, with the exception of capital punishment cases, successful Eighth Amendment

challenges to the proportionality of a sentence have been exceedingly rare.' " (quoting *United States v. Yousef,* 327 F.3d 56, 163 (2d Cir. 2003) ("Lengthy prison sentences, even those that exceed any conceivable life expectancy of a convicted defendant, do not violate the Eighth Amendment's prohibition against cruel and unusual punishment when based on a proper application of the Sentencing Guidelines or statutorily mandated consecutive terms."))).

The court will, however, decide defendant's facial challenge to the statute as a violation of due process and/or equal protection at this time. *See United States v. Santana,* 761 F.Supp.2d 131, 141 (S.D.N.Y.2011) ("There is certainly a viable argument that a question of law relating to a defendant's potential mandatory minimum sentence must be resolved prior to trial in the case of a Defendant considering a guilty plea, both because Federal Rule of Criminal Procedure 11 requires the Court to advise the defendant before accepting a plea of 'any mandatory minimum penalty,'

(Def. Arg. at 12.) This argument is without merit. It has long been recognized by the Supreme Court that "Congress has the power to define criminal punishments without giving the courts any sentencing discretion." *Chapman v. United States,* 500 U.S. 453, 467, 111 S.Ct. 1919, 114 L.Ed.2d 524 (1991); *see also Kimbrough v. United States,* 552 U.S. 85, 106–107, 128 S.Ct. 558, 169 L.Ed.2d 481 (2007) ("[S]entencing courts," although permitted to deviate from the advisory Sentencing Guidelines range of imprisonment based on their policy disagreements with the Guidelines, "remain bound by the mandatory minimum sentences prescribed in the [statutes]."); *United States v. Shaw,* 354 Fed.Appx. 439, 447 (2d Cir.2009) (summary order) ("[T]he Supreme Court has squarely rejected the argument that mandatory minimum sentences violate due process and held that Congress may confine the courts' discretion in sentencing with mandatory minimum sentences in statutes." (citing *Chapman,* 500 U.S. at 467, 111 S.Ct. 1919)).

■ "To sustain a federal sentencing statute against a due process or equal protection challenge, courts need only find that 'Congress had a rational basis for its choice of penalties.'" *United States v. Proyect,* 989 F.2d 84, 88–89 (2d Cir.1993) (quoting *Chapman,* 500 U.S. at 465, 111 S.Ct. 1919); *see also United States v. Coleman,* 166 F.3d 428, 431 (2d Cir.1999) ("Penal distinctions based on differences in voluntary conduct thus cannot be arbitrary, but this caveat subjects them only to rational-basis scrutiny."); *United States v. Huerta,* 878 F.2d 89, 94 (2d Cir.1989) ("[T]here is no right to individualized sentencing, and Congress may constitutionally prescribe mandatory sentences or otherwise constrain the exercise of judicial discretion so long as such constraints have a rational basis." (citations omitted)). Rational basis review is "deferential" and "does not pass judgment upon the wisdom, fairness, or logic of legislative decisions; it turns on whether there are 'plausible' reasons for Congress's choices." *Weinstein v. Albright,* 261 F.3d 127, 140 (2d Cir.2001) (internal quotation marks omitted).

Congress implemented the five-year mandatory minimum sentence for receipt of child pornography in the Prosecutorial Remedies and Other Tools to End the Exploitation of Children Today Act of 2003 (the "PROTECT Act"), which became law on April 30, 2003. "The PROTECT Act was designed to strengthen the laws and procedures for detecting, investigating, prosecuting and incarcerating child kidnappers and sexual offenders, including those who possess child pornography." *United States v. Grigg,* 442 F.3d 560, 562–63 (7th Cir.2006). In passing the PROTECT Act, Congress made the following findings:

> The Government has a compelling state interest in protecting children from those who sexually exploit them, including both child molesters and child pornographers. "The prevention of sexual exploitation and abuse of children constitutes a government objective of surpassing importance," and *this interest extends to stamping out the vice of child pornography at all levels in the distribution chain.*

PROTECT Act, Pub.L. No. 108–21, § 501(2), 117 Stat. 650, 676 (2003) (emphasis added) (citations omitted) (quoting *New York v. Ferber,* 458 U.S. 747, 757, 102 S.Ct. 3348, 73 L.Ed.2d 1113 (1982)).

and because of the requirement that a plea is only valid if knowingly and intelligently made." (citation omitted)).

Congress also previously made several findings regarding the need for harsh penalties for child pornography in connection with its passage of the Child Pornography Act of 1996. *See* Child Pornography Act of 1996, Pub.L. No. 104–208, § 121(4), 110 Stat. 3009 (1996) ("[C]hild pornography is often used by pedophiles and child sexual abusers to stimulate and whet their own sexual appetites, and as a model for sexual acting out with children"); *id.* § 121(10) ("[T]he existence of and traffic in child pornographic images creates the potential for many types of harm in the community and presents a clear and present danger to all children; and it inflames the desires of child molesters, pedophiles, and child pornographers who prey on children"); *id.* § 121(12) ("[P]rohibiting the possession and viewing of child pornography will encourage the possessors of such material to rid themselves of or destroy the material, thereby helping to protect the victims of child pornography and to eliminate the market for the sexual exploitative use of children"); *id.* § 121(13) ("[T]he elimination of child pornography and the protection of children from sexual exploitation provide a compelling governmental interest for prohibiting the production, distribution, possession, sale, or viewing of visual depictions of children engaging in sexually explicit conduct.").

Based on these findings, which demonstrate that prohibitions on viewing child pornography help to eliminate the market for the sexual exploitative use of children, Congress had, at a minimum, a rational basis to impose a five-year mandatory minimum sentence for receipt of child pornography, which unquestionably facilitates the distribution and viewing of child pornography. *See United States v. Williams,* 553 U.S. 285, 128 S.Ct. 1830, 170 L.Ed.2d 650 (2008) ("Child pornography harms and debases the most defenseless of our citizens."); *Osborne v. Ohio,* 495 U.S. 103, 109, 110 S.Ct. 1691, 109 L.Ed.2d 98 (1990) (" 'It is evident beyond the need for elaboration that a State's interest in 'safeguarding the physical and psychological well-being of a minor' is 'compelling.' ... The legislative judgment, as well as the judgment found in relevant literature, is that the use of children as subjects of pornographic materials is harmful to the physiological, emotional, and mental health of the child.' " (quoting *Ferber,* 458 U.S. at 756–58, 102 S.Ct. 3348)); *United States v. Hotaling,* 634 F.3d 725, 728 (2d Cir.2011) ("The Supreme Court has long recognized that the government has a compelling interest in protecting minors from becoming victims of child pornography because of the physiological, reputational and emotional harm that distribution of such material imposes on them." (citing *Ashcroft v. Free Speech Coal.,* 535 U.S. 234, 249, 122 S.Ct. 1389, 152 L.Ed.2d 403 (2002))).

Defendant has not cited a single case in which a court has found a statutory mandatory minimum term of imprisonment unconstitutional on a facial challenge, let alone a mandatory minimum sentence for a child pornography offense.[13] Rather, as

13. In support of his position, defendants cites to decisions by Judge John Gleeson in which he criticizes the applicability of mandatory minimum terms of imprisonment for low-level drug offenders. *See, e.g., United States v. Dossie,* 851 F.Supp.2d 478 (E.D.N.Y.2012); *United States v. Vasquez,* No. 09–CR–259, 2010 WL 1257359, 2010 U.S. Dist. LEXIS 32293 (E.D.N.Y. Mar. 30, 2010). These decisions do not, however, address the constitu-tionality of the mandatory minimum sentences or involve victims who are children. Moreover, in each case, Judge Gleeson imposed the mandatory minimum sentence despite his disagreement with the law. *Dossie,* 851 F.Supp.2d at 489 ("The only reason for the five-year sentence imposed on Dossie is that the law invoked by the prosecutor required it."); *Vasquez,* 2010 WL 1257359, at *5, 2010 U.S. Dist. LEXIS 32293, at *15 ("I

demonstrated by the government, courts that have considered rationality challenges to minimum sentences for child pornography offenses have consistently rejected them, including Judge Weinstein in *C.R.*, which, as discussed *supra*, was relied upon by the defendant to dismiss the distribution charges. *C.R.*, 792 F.Supp.2d at 348 ("Irrationality for lack of due process is not a basis for declaring the five-year minimum unconstitutional on its face."); *see also United States v. McIntosh*, 414 Fed. Appx. 840, 842 (6th Cir.2011) (upholding ten-year mandatory minimum sentence for a second child pornography conviction under Section 2252A(b)(2) on the basis that "[p]rotecting children from those who sexually exploit them is a legitimate objective of government, and punishing those who create a market for this exploitation—either on the supply *or* the demand side—is a rational means of accomplishing that goal."); *United States v. Vanausdal*, 269 Fed.Appx. 652, 653 (9th Cir.2008) (upholding five-year mandatory minimum sentence for a violation of Section 2252(a)(1) "because Congress had a rational basis for creating mandatory minimum sentences to combat child pornography. . . ."); *United States v. MacEwan*, 445 F.3d 237, 253 (3d Cir.2006) ("[W]e determine that the 15-year minimum sentence mandated by § 2252A(b)(1) [for receiving child pornography with a prior child pornography conviction] does not offend the Due Process Clause of the Fifth Amendment.").

Defendant argues that "there is virtually no distinction between possessing and receiving pornography" and appears to suggest that the five-year mandatory minimum sentence should be found unconstitutional because it arbitrarily applies to receipt but not possession. (Def. Arg. at 10–11.) Especially when it comes to child pornography viewed and/or downloaded on a P2P program or generally on a computer, receipt and possession may constitute the same act.[14] *See United States v. Weisser*, 417 F.3d 336, 347 n. 8 (2d Cir. 2005) (recognizing that " 'possessors, unless they fabricate their own pornography, are also receivers.' " (quoting *United States v. Richardson*, 238 F.3d 837, 839 (7th Cir.2001))); *see also United States v. Robinson*, 669 F.3d 767, 776 n. 2 (6th Cir.2012) ("[S]tanding alone, the current statutory scheme makes no principled dis-

---

was forced by a law that should not have been invoked to impose a five-year prison term.").

14. The Second Circuit has not decided whether possessing child pornography is a lesser-included offense of receiving such pornography, but has recognized that at least two other Circuit courts have "ruled that a defendant's convictions of both 'receiving and possessing the same images of child pornography' violated his right to be free from double jeopardy." *United States v. Irving*, 554 F.3d 64, 79 (2d Cir.2009) (citing *United States v. Miller*, 527 F.3d 54, 58 (3d Cir.2008); *United States v. Davenport*, 519 F.3d 940, 947 (9th Cir.2008)); *see also United States v. Calhoun*, 450 Fed.Appx. 74, 77 (2d Cir.2011) (summary order); *United States v. Pomarico*, No. 06 CR 113, 2010 WL 4608423, at *2, 2010 U.S. Dist. LEXIS 116606, at *7–8 (E.D.N.Y. Nov. 1, 2010) (following *Miller* and *Davenport* and vacating possession counts where a jury con-

victed defendant of seven counts of receiving and seven counts of possessing the same seven images). Here, the Superseding Indictment does not indicate that the six receipt counts and the single possession count are predicated on the same child pornography files.

Notably, the Second Circuit has held that "possession of multiple images of child pornography at the same time and place may not properly be charged as multiple counts—as opposed to a single count of illegal possession—and similarly that receipt of multiple images of child pornography in a single transaction may not be charged as multiple violations of 18 U.S.C. § 2252(a)(2)." *United States v. Polouizzi*, 393 Fed.Appx. 784 (2d Cir.2010) (summary order) (citing *United States v. Polouizzi*, 564 F.3d 142 (2d Cir. 2009)).

tinction between possessing and receiving child pornography, which can often times be virtually identical conduct, but nonetheless results in vastly different mandatory sentencing ranges."); *United States v. Kuchinski*, 469 F.3d 853, 861 (9th Cir.2006) ("[A] person does knowingly receive and possess child pornography images when he seeks them out over the internet and then downloads them to his computer." (footnote omitted)).

■ As recognized by Judge Weinstein, however, although it "might be more rational to classify and punish" computer-based receipt and possession similarly, "the legislature's decision to enact mandatory minimums for some offenses but not others does not make a specific mandatory minimum sentence irrational." *United States v. Polizzi*, 549 F.Supp.2d 308, 375–76 (E.D.N.Y.2008) (rejecting constitutional challenge on the ground that it is irrational to punish receipt more harshly than possession), *vacated on other grounds by United States v. Polouizzi*, 564 F.3d 142 (2d Cir.2009).

In *United States v. McElheney*, a district court rejected a due process challenge to the disparity in punishment between receipt and punishment under Section 2252:

> There is a rational basis for the distinction between receiving child pornography and possessing it. Possession is passive and receiving is more active. It is rational for Congress to seek to eliminate the market for child pornography, that is, to stop trafficking in it. Someone who merely possesses child pornography is not as active in the market as someone who receives child pornography, so there is a rational basis for Congress's decision to impose different sentences for those offenses.

524 F.Supp.2d 983, 1000–01 (E.D.Tenn. 2007), *vacated on other grounds by* 310

Fed.Appx. 857 (6th Cir.2009). Circuit courts outside the Second Circuit have also distinguished between receipt and possession in the child pornography context. *See United States v. Sturm*, 673 F.3d 1274, 1280 (10th Cir.2012) ("Because the harms flowing from possession of child pornography differ from those associated with distribution and receipt, differentiating levels of punishment should not be unexpected."); *United States v. Olander*, 572 F.3d 764, 769–70 (9th Cir.2009) ("Congress could have concluded that knowing receipt of child pornography should be punished more severely than mere possession because not all cases of possession require receipt .... [and] to deter those who receive child pornography from others and who thereby create demand and drive the market for child pornography."); *United States v. Watzman*, 486 F.3d 1004, 1009 (7th Cir.2007) (rejecting vagueness challenge because "receiving materials that have been shipped in interstate commerce is conduct more closely linked to the market for child pornography and so 'possession and receipt are not the same conduct and threaten distinct harms.'" (quoting *United States v. Myers*, 355 F.3d 1040, 1042–43 (7th Cir.2004))). In light of these decisions, the court finds that there are "plausible" reasons for Congress to impose a mandatory minimum sentence of five years for receipt but not possession and that such a distinction is not irrational. *Weinstein*, 261 F.3d at 140.

Finally, the Second Circuit has squarely rejected on numerous occasions defendant's argument that a five-year minimum sentence is unconstitutional because it "strip[s] the Court of the ability to fulfill its proper judicial role which is to consider all of the relevant factors at sentencing pursuant to 18 U.S.C. [§ ] 3553(a)." (Def. Arg. at 11; Def. Reply at 3.) In *United States v. Samas*, the Second Circuit reject-

ed a challenge to the mandatory sentencing scheme of 21 U.S.C. § 841(b), stating that "a district court must impose a statutorily mandated sentence even if the court would reach a different determination if it considered only § 3553(a)." 561 F.3d 108, 110 (2d Cir.2009) (citing *United States v. Chavez,* 549 F.3d 119, 135 (2d Cir.2008)). The Second Circuit further elaborated that "statutory minimum sentences are in 'tension with section 3553(a), but that very general statute cannot be understood to authorize courts to sentence below minimums specifically prescribed by Congress....'" *Id.* at 110–111 (internal quotation marks omitted); *id.* ("The wording of § 3553(a) is not inconsistent with a sentencing floor."); *see e.g. United States v. Ortiz,* 405 Fed.Appx. 544, 544–45 (2d Cir. 2010) (summary order) (rejecting argument that "the parsimony clause in 18 U.S.C. § 3553(a) conflicts with the mandatory minimum sentencing provisions"); *United States v. Thompson,* 395 Fed.Appx. 781, 782 (2d Cir.2010) (summary order) (same); *United States v. Jimenez,* 394 Fed.Appx. 806, 807–08 (2d Cir.2010) (summary order) (same); *United States v. McCown,* 395 Fed.Appx. 759, 761–62 (2d Cir.2010) (summary order) (same). Accordingly, this challenge fails as well, and the court denies defendant's motion to declare unconstitutional on its face the five-year mandatory minimum sentence for receipt of child pornography under Section 2252(b)(1).

### CONCLUSION

For the reasons set forth above, the court denies defendant's motion to (1) dismiss the charges for distribution of child pornography; (2) inspect the grand jury minutes; and (3) declare unconstitutional the five-year mandatory minimum sentence for receipt of child pornography. In light of this decision, the parties shall appear for a status conference on September 12, 2012 at 4:00 p.m.

**SO ORDERED.**