**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 13-2688
_____

UNITED STATES OF AMERICA,

v.

DAVID GEORGE HUSMANN,
                                    Appellant


_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(No. 12-cr-00141-001)
District Judge: Honorable Lawrence F. Stengel

_____

Argued: March 24, 2014

Before: FUENTES, GREENBERG, and VAN
ANTWERPEN, *Circuit Judges*.

(Opinion Filed: September 3, 2014)

Zane David Memeger, Esq.
Robert A. Zauzmer, Esq. **[ARGUED]**
Michelle Rotella, Esq.
Office of the United States Attorney
615 Chestnut Street
Suite 1250
Philadelphia, PA 19106
*Attorneys for Appellee, United States of America*

Theodore C. Forrence, Jr., Esq. **[ARGUED]**
Kenneth C. Edelin, Jr., Esq.
1500 John F. Kennedy Boulevard
Two Penn Center Plaza
Suite 200
Philadelphia, PA 19102
*Attorneys for Appellant, David George Husmann*

_____

OPINION OF THE COURT
_____

FUENTES, *Circuit Judge*.

David George Husmann placed various images of child pornography in a shared computer folder connected to a file sharing network. Based on that conduct, a jury convicted him of three counts of distributing child pornography. At trial, the government did not present evidence that any person had actually downloaded or obtained the materials that Husmann made available. The issue we address is whether the mere act of placing child pornography materials in a shared computer

folder, available to other users of a file sharing network, constitutes distribution of child pornography. We conclude it does not. A conviction for distributing child pornography cannot be sustained without evidence that another person actually downloaded or obtained the images stored in the shared folder. Accordingly, we vacate Husmann's conviction under 18 U.S.C. § 2252(a)(2) and remand for resentencing.

# I.

## A.

While Husmann was on supervised release for a child pornography conviction, the U.S. Probation Office received a software alert indicating that his computer had accessed pornographic websites and images. In response to the alert, U.S. Probation Officer Stephen Carmichael visited Husmann's residence. Carmichael found Husmann in the act of viewing a still image of a young girl between six and eight years old posed in a bathing suit. Carmichael thought this image originated from a flash drive in the USB port of Husmann's DVD player. Carmichael seized that drive and three other flash drives.

Carmichael found pornographic images on the flash drives and referred the case to the FBI for investigation. After obtaining a search warrant, FBI agents searched Husmann's home. They seized several computers and computer-related items. They also questioned Husmann, who admitted to downloading, saving, and viewing all of the images stored on the flash drives that Carmichael had seized over a month earlier.

FBI Agent Donald Price subsequently reviewed the evidence seized from Husmann's home. He found over 4,000 images of child erotica. Of these images, the government identified approximately 65 still images and one hour-long movie as child pornography. Price also found two file sharing programs installed on Husmann's computer, Limewire and 360 Share Pro.

File sharing programs, also known as peer-to-peer file sharing programs, enable computer users to share and receive electronic files, including images, videos, and audio files, with a network of other users. To exchange files, users' computers communicate directly with each other, rather than through central servers. *See Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 919-20 (2005). Program users can search for files made available by other users, browse files made available by a specific user, and download files. *See United States v. Chiaradio*, 684 F.3d 265, 271 (1st Cir. 2012) (discussing the features of file sharing programs). Program users can also make their files accessible to others by placing their files in a designated folder that is available to the network of program users. *See id.* Since communications take place between computers connected to the file sharing network and do not travel through a central server, s*ee Metro-Goldwyn-Mayer Studios*, 545 U.S. at 920, placing files into a shared folder does not automatically transmit them to another computer; shared files do not leave a user's computer until another program user actually downloads them.

360 Share Pro maintains an extensive log file that details what materials a user has made available for sharing. Agent Price's review of the log file in this case revealed that child pornography files were placed in a shared folder on 360

Share Pro, allowing others access to the files on several dates. However, Price could not identify when these files were loaded to the shared folder nor could he determine if the files were "ever downloaded to another machine." App. 202.

**B.**

Following the government's investigation, a federal grand jury returned a seven-count indictment. Counts One through Three alleged that Husmann knowingly distributed child pornography, in violation of 18 U.S.C. § 2252(a)(2). Counts Four through Six alleged that Husmann knowingly received child pornography, in violation of 18 U.S.C. § 2252(a)(2). Finally, Count Seven alleged that Husmann knowingly possessed child pornography, in violation of 18 U.S.C. § 2252(a)(4)(B).

The case proceeded to trial. On the first day of trial, the government voluntarily dismissed Counts Four through Six, which charged Husmann with knowingly receiving child pornography. At the close of the government's case, Husmann moved to dismiss the remaining charges pursuant to Rule 29 of the Federal Rules of Criminal Procedure. He argued that the government's evidence was insufficient to establish that he was the person who uploaded the files in question, since the four other people who lived with him had easy access to the computer and flash drive at issue. The District Court denied the motion and called for the defense's case. Thereafter, the jury found Husmann guilty of three counts of distribution and one count of possession of child pornography.

Before sentencing, the Probation Department submitted a Presentence Investigation Report ("PSR"), which

5

identified Husmann's base offense level as 22. The PSR proposed several enhancements under § 2G2.2 of the Sentencing Guidelines and calculated Husmann's Adjusted Offense Level as 37. The report stated that, based on an offense level of 37 and a criminal history category of III, Husmann's guideline sentence ranged from 262 to 327 months. The government later filed a sentencing memorandum. The government agreed with virtually all of the enhancements proposed by Probation except that it recommended a two-level, instead of four-level, enhancement for the number of child pornography images in Husmann's inventory.

The District Court subsequently conducted a sentencing hearing. The Court declined to apply a two-level enhancement under U.S.S.G. § 2G2.2(b)(6) for the use of a computer, since virtually all child pornography offenders use computers. Additionally, the District Court adopted the government's proposal to apply a two-level enhancement for the number of child pornography images in Husmann's collection. After imposing the other enhancements, Husmann's total offense level became 33, with a corresponding guideline range of 168-210 months. Ultimately, the District Court sentenced Husmann to a 240-month term of incarceration on each count, to be served concurrently. Husmann appealed.[1]

---

[1] The District Court had subject matter jurisdiction over this case under 18 U.S.C. § 3231, and we have jurisdiction under 28 U.S.C. § 1291.

## II.

This appeal turns on an issue of statutory construction, namely whether placing child pornography materials in a shared folder available to other users of a file sharing network constitutes "distribution" within the meaning of 18 U.S.C. § 2252(a)(2). Husmann argues that the District Court erred in denying his Rule 29 motion for acquittal with respect to the distribution counts because the government presented no evidence that anyone accessed, viewed, or downloaded files from his shared folder. He asserts that placing child pornography in a shared folder, without anything more, does not amount to distribution under § 2252(a)(2). The government, on the other hand, contends that "'distribution' within the meaning of the statute should be defined as encompassing the act of sharing a file on a file sharing service, by making it available to all other users." Gov't Br. 20.

Husmann also argues that the District Court committed several errors at sentencing. He claims that the District Court erred when it identified his prior conviction for possession of child pornography as a predicate offense for a five-level sentencing enhancement. Additionally, he argues that the District Court's imposition of a 240-month term of imprisonment was procedurally and substantively unreasonable.[2]

---

[2] Federal Rule of Criminal Procedure 29(a) provides that "the court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." Fed. R. Crim. P. 29(a). Before the District Court, Husmann did not present a legal argument

7

## A.

Turning to Husmann's statute of conviction, 18 U.S.C. § 2252(a)(2) provides that:

> Any person who . . . (2) knowingly receives, or distributes, any visual depiction using any means or facility of interstate or foreign commerce . . . by any means including by computer . . . if—(A) the producing of such visual depiction involves the use of a minor engaging in sexually explicit conduct; and (B) such visual depiction is of such conduct . . . shall be punished as provided in subsection (b) of this section.

Because the statute does not define the term "distribute," "we construe it in accordance with its ordinary

---

regarding the meaning of "distribute" in § 2252(a)(2). Therefore, we exercise plain error review. *See Puckett v. United States*, 556 U.S. 129, 134-35 (2009). To establish plain error, an appellant must demonstrate that: "(1) there was an error; (2) the error is clear or obvious; and (3) the error affected the appellant's substantial rights, which in the ordinary case means it affected the outcome of the district court proceedings." *United States v. Andrews*, 681 F.3d 509, 517 (3d Cir. 2012) (quotation marks omitted). If these three conditions are satisfied, "an appellate court may then exercise its discretion to notice a forfeited error, but only if . . . the error seriously affect[s] the fairness, integrity, or public reputation of the judicial proceedings." *Id.* (alterations in original) (quoting *Johnson v. United States*, 520 U.S. 461, 467 (1997)).

meaning." *See Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S. Ct. 1749, 1756 (2014) (quotation marks and brackets omitted). We look to dictionary definitions to determine the ordinary meaning of a word. *See United States v. Geiser*, 527 F.3d 288, 294 (3d Cir. 2008). It is well settled, however, that a "word must not be read in isolation but instead defined by reference to its statutory context." *Ali v. Fed. Bureau of Prisons*, 552 U.S. 214, 234 (2008). After all, "[a] word in a statute may or may not extend to the outer limits of its definitional possibilities. Interpretation of a word or phrase depends upon reading the whole statutory text, considering the purpose and context of the statute, and consulting any precedents or authorities that inform the analysis." *Dolan v. U.S. Postal Serv.*, 546 U.S. 481, 486 (2006). Therefore, to determine the meaning of "distribute" in § 2252(a)(2), we consider definitions of the term, the statutory context, and the case law.

*Black's Law Dictionary* defines "distribute" as: "[t]o apportion; to divide among several" and "[t]o deliver." *Black's Law Dictionary* 487 (9th ed. 2009). Merriam-Webster provides the following definitions, among others, for the term "distribute": "to divide among several or many" and "to give out or deliver especially to members of a group." *See Distribute Definition*, Merriam-Webster Dictionary, *available at* http://www.merriam-webster.com/dictionary/distribute. We find additional guidance in the definition of "distribute" set forth in the controlled substances context. Under the Model Criminal Jury Instructions for the Third Circuit, to distribute a controlled substance means "(*to deliver or to transfer*) possession or control of a controlled substance from one person to another." Model Criminal Jury Instructions for the Third Circuit § 6.21.841-2 (2014); *see also* 21 U.S.C. §

9

802(11) (providing that "'distribute' means to deliver" for purposes of drug offenses).

The statutory context confirms that "distribute" in § 2252(a)(2) means to apportion, give out, or deliver and that distribution necessarily involves the transfer of materials to another person. Significantly, Congress legislated specific prohibitions against offering and promoting child pornography within the same statutory scheme as it prohibited distributing child pornography. *See* 18 U.S.C. § 2251(d)(1)(A) (prohibiting offers to distribute child pornography); 18 U.S.C. § 2252A(a)(3)(B) (prohibiting the advertisement and promotion of child pornography); *see also United States v. Sewell*, 513 F.3d 820, 822 (8th Cir. 2008) (holding that placing images of child pornography in a shared folder on a peer-to-peer file sharing program was "clearly an offer to distribute the file," in violation of 18 U.S.C. § 2551(d)(1)(A)). Congress also penalized the attempted distribution of child pornography through specific statutory provisions. *See* 18 U.S.C. §§ 2252(b)(1), 2252A(b)(1). Because Congress has separately criminalized offering, promoting, and attempting to distribute child pornography, a broad definition of the term "distribute" would create unnecessary surplussage. To give effect to the entire statutory scheme, "distribute" must require the transfer of possession of child pornography to another person.

The decisions of our sister circuits provide support for our construction of the term "distribute."[3] Several circuits

---

[3] Cases addressing child pornography distribution convictions arise under 18 U.S.C. § 2252(a)(2) as well as 18 U.S.C. § 2252A(a). Both provisions prohibit the distribution of child

10

have made clear that distribution occurs when pornographic materials are actually transferred to or downloaded by another person. The Ninth Circuit in *United States v. Budziak* held that "the evidence is sufficient to support a conviction for distribution under 18 U.S.C. § 2252(a)(2) when it shows that the defendant maintained child pornography in a shared folder, knew that doing so would allow others to download it, and another person actually downloaded it." 697 F.3d 1105, 1109 (9th Cir. 2012). Similarly, the First Circuit in *Chiaradio* explained that distribution occurs "[w]hen an individual consciously makes files available for others to take and *those files are in fact taken*." 684 F.3d at 282 (emphasis added); *see also United States v. Shaffer*, 472 F.3d 1219, 1223 (10th Cir. 2007) ("We have little difficulty in concluding that [the defendant] distributed child pornography in the sense of having 'delivered,' 'transferred,' 'dispersed,' or 'dispensed' it to others.").

Moreover, numerous courts have noted the fact of a file transfer or download when affirming child pornography distribution convictions under § 2252. *See, e.g.*, *United States v. Richardson*, 713 F.3d 232, 236 (5th Cir. 2013) (upholding a distribution conviction where a law enforcement officer "actually downloaded" a child pornography video stored in the defendant's shared folder); *Budziak*, 697 F.3d at 1109 (affirming a distribution conviction, where FBI "agents actually downloaded shared files containing child pornography from an IP address registered to" the defendant); *Chiaradio*, 684 F.3d at 282 (upholding a distribution conviction because a "rational jury could conclude . . . that

pornography and are materially the same for purposes of the issue before us.

the defendant intentionally made his files available for the taking and that [the agent] simply took him up on his offer"); *Shaffer*, 472 F.3d at 1224 (affirming a conviction for distribution of child pornography based, in part, on the fact that an agent was able to download child pornography from the defendant's shared folder); *see also United States v. Abraham,* No. 05-344, 2006 WL 3052702, at *8 (W.D. Pa. Oct. 19, 2006) (holding that "the defendant distributed a visual depiction when as a result of the defendant's installation of an internet peer-to-peer video file sharing program on his computer, a Pennsylvania state trooper was able to download the child pornography from the defendant's computer to the trooper's computer").

The dissent contends that we have "missapplie[d] the need for a download to create distribution, where other factual bases have greater merit in interpreting the definition." Dissent Op. at 10. Yet no such ranking system is evident within decisions addressing child pornography distribution convictions. Additionally, the dissent quotes from *Shaffer* and other cases to suggest that merely making files accessible to others is sufficient to constitute distribution of child pornography. That is not so. In *Shaffer*, it was undisputed that the defendant's child pornography had been downloaded by other individuals, but the defendant argued that he was not guilty of distribution because he did not take any affirmative steps to transfer possession of those materials. The Tenth Circuit in *Shaffer* rejected the defendant's argument, explaining that the defendant "distributed child pornography in the sense of having 'delivered,' 'transferred,' 'dispersed,' or 'dispensed' it to others" because he "freely allowed [agents] access to his computerized stash of images and videos" *and* an agent "had no trouble whatsoever picking and

choosing for download images and videos from [the defendant's] child pornography collection." 472 F.3d at 1223-24. To be clear, no circuit has held that a defendant can be convicted of distribution under § 2252 in the absence of a download or transfer of materials by another person.

Notably, military courts interpreting § 2252 have held that the term "distribute" requires evidence of an actual download or transfer of materials. *See United States v. Gorski*, 71 M.J. 729, 734 (A. Ct. Crim. App. 2012) ("[D]istribution of child pornography files requires the files to have been *transferred or delivered to the possession of another* via peer-to-peer file-sharing software programs." (emphasis added)); *United States v. Craig*, 67 M.J. 742, 746 (N-M. Ct. Crim. App. 2011) (declining "to include incomplete transfers of possession within the meaning of 'distribute' as it relates to child pornography"). In *Gorski* and *Craig*, the courts rejected the defendants' guilty pleas to distribution of child pornography because there was no evidence that another person actually downloaded the materials at issue. *See Gorski*, 71 M.J. at 736 (rejecting the guilty plea to distribution because the defendant's "actions in merely making files available for download via peer-to-peer file-sharing software programs cannot amount to distribution as a matter of law"); *Craig*, 67 M.J. at 746 (holding that the guilty plea was "improvident because it [wa]s supported only by facts that the images and videos were made available" and there was no evidence of "a completed transfer of possession of the contraband").

**B.**

The government argues that the meaning of the term "distribute" in § 2252(a)(2) should track the definition of

13

"distribution" set forth in the Guidelines Manual for purposes of the distribution enhancement under U.S.S.G. § 2G2.2(b)(3). However, the definition of "distribution" under the Sentencing Guidelines has no bearing on the meaning of the term in § 2252. As the Tenth Circuit has held, "the statutory term has a distinct meaning and is not as broad as the same term under § 2G2.2(b)(3)." *United States v. Ramos*, 695 F.3d 1035, 1044 (10th Cir. 2012). "Distribution" under § 2G2.2(b)(3) extends to such acts as "possession with intent to distribute, production, advertisement, and transportation, related to the transfer of material involving the sexual exploitation of a minor." U.S. Sentencing Guidelines Manual § 2G2.2 app. n.1. In fact, "*any* act . . . *related* to the transfer of material involving the sexual exploitation of a minor" qualifies as "distribution" under § 2G2.2(b)(3). *Id.* (emphasis added). Defendants can be subject to the distribution enhancement even if they are not convicted of distributing child pornography, since the enhancement applies to anyone convicted under 18 U.S.C. §§ 1466A, 2252, 2252A(a)-(b), and 2260(b). *See* U.S. Sentencing Guidelines Manual § 2G2.2 cmt. (listing the applicable statutory provisions); *see also United States v. Vallejos*, 742 F.3d 902, 908 (9th Cir. 2012) (holding that the district court properly applied a distribution enhancement to a defendant convicted of receipt of material involving the sexual exploitation of minors); *United States v. Layton*, 564 F.3d 330, 335 (4th Cir. 2009) (upholding the application of a distribution enhancement to a defendant convicted of possession of child pornography). While several circuits have held that merely placing child pornography in a shared folder on a file sharing network warrants application of a distribution enhancement, no circuit has relied on the Sentencing Guidelines definition of "distribution" to interpret the meaning of the term in

14

§ 2252(a)(2). Because "distribute" in § 2252(a)(2) is narrower than the same term in § 2G2.2(b)(3), we decline to adopt the definition of "distribution" laid out in the Sentencing Guidelines.

Based on the ordinary meaning of the word "distribute," the other statutory provisions criminalizing child pornography offenses, and the decisions of our sister circuits, we hold that the term "distribute" in § 2252(a)(2) requires evidence that a defendant's child pornography materials were completely transferred to or downloaded by another person. Of course, knowingly placing child pornography in a shared folder on a file sharing network remains a criminal offense. *See, e.g.*, 18 U.S.C. § 2251(d)(1)(A) (prohibiting offers to distribute child pornography); 18 U.S.C. § 2252(b)(1) (prohibiting attempted distribution). It just isn't distribution. In the end, our interpretation of "distribute" in § 2252(a)(2) might affect the government's charging decisions, but it does not handicap the government's ability to prosecute child pornography offenses.

## C.

In this case, the government did not introduce evidence that anyone downloaded child pornography materials from Husmann's shared folder. Price testified that a document entitled "/yayaohno63" and several other files containing child pornography were successfully loaded to a shared folder on 360 Share Pro. However, neither he nor any other witness testified that another person actually downloaded those files. To the contrary, Price testified that he could not verify when Husmann's materials were placed within a shared folder nor

15

could he determine if the documents were "ever downloaded to another machine." App. 202.

Because distribution requires a download or transfer of materials and because the government did not present evidence that Husmann distributed child pornography within the meaning of § 2252(a)(2), the District Court erred in denying Husmann's motion for acquittal.

**III.**

The government argues that, even if the District Court committed an error, it did not amount to plain error. An error is not "plain" if it is not "clear under current law." *United States v. Clark*, 237 F.3d 293, 297 (3d Cir. 2001). To date, the Third Circuit has not ruled on the meaning of the term "distribute" for purposes of § 2252(a)(2). Moreover, it does not appear that any Article III court has addressed the precise question of whether "distribution" occurs without evidence of a download or transfer of materials. Yet the lack of case law on this specific question does not doom Husmann's appeal, since "[n]either the absence of circuit precedent nor the lack of consideration of the issue by another court prevents the clearly erroneous application of statutory law from being plain error." *See United States v. Evans*, 155 F.3d 245, 252 (3d Cir. 1998).

The ordinary meaning of the word "distribute" is to apportion, deliver, or give out; the overall statutory scheme reveals that the term cannot encompass offers and attempts to distribute; and appellate case law indicates that distribution under § 2252(a)(2) requires evidence that child pornography materials are actually downloaded by or completely

transferred to another person. Taken together, the District Court's error was "clear under current law." *See Clark*, 237 F.3d at 297.

Furthermore, the error affected Husmann's substantial rights. Had the District Court granted Husmann's Rule 29 motion for acquittal as to the distribution counts in the indictment, Husmann not only would have been acquitted on the three counts of distribution, but he would have been subject to a lower base offense level and a reduced guideline range. A conviction under 18 U.S.C. § 2252(a)(2) carries a base offense level of 22. *See* U.S.S.G. § 2G2.2(a)(2). By contrast, Husmann's remaining conviction for possession of child pornography, in violation of 18 U.S.C. § 2252(a)(4), carries a base offense level of 18. *See* U.S.S.G. § 2G2.2(a)(1).

Accordingly, we conclude that the District Court committed plain error in denying Husmann's Rule 29 motion. Because "imposing a sentence not authorized by law seriously affects the fairness, integrity, and reputation of the proceedings," we exercise our discretion and vacate Husmann's conviction for distributing child pornography. *See Evans*, 155 F.3d at 252. We remand to the District Court for resentencing with respect to Husmann's remaining conviction for possession of child pornography. Therefore, we do not reach Husmann's challenges to his sentence.

## IV.

A jury convicted Husmann of distributing child pornography pursuant to § 2252(a)(2). Yet the government did not present evidence that Husmann's attempts to distribute child pornography ever succeeded. Because

17

distribution requires a download or transfer of materials, we conclude that the District Court committed plain error in denying Husmann's motion for acquittal. Therefore, we vacate his conviction under § 2252(a)(2) and remand for resentencing.

*United States v. David George Husmann* **No. 13-2688**, Argued March 24, 2014

VAN ANTWERPEN, *Circuit Judge*, dissenting.

I cannot join my colleagues in the narrow definition of "distribution" they would apply to child pornography cases. George Husmann was convicted by a jury of three counts of distributing child pornography pursuant to 18 U.S.C. § 2252(a)(2). Husmann placed images of child pornography into a shared folder accessible to all global users of the peer-to-peer ("P2P") file sharing program 360 Share Pro. Once in the shared folder, a search term and a click of a mouse allowed access to these images by any user on the system. My colleagues definition of "distribution," under 18 U.S.C. § 2252, would create a system in which a person who intentionally posted child pornography on the Internet, knowing it is accessible to hundreds, if not millions, of individuals, is not "distribution." This is certainly not what Congress had in mind and following the majority's approach, the crime of distribution would not be complete until a police officer downloaded the image.[1] This is a distinction without merit. Given the plain meaning of the term, the intent of Congress, the advancement of technology, as well as a series of recent sentencing cases, the placing of child pornography into a shared file accessible over a peer-to-peer file sharing network, alone should constitute "distribution." Husmann

---

[1] This is not a strict requirement of the majority's definition, however due to the inability to search third party computers, law enforcement officers downloading the image prior to arrest is most common in cases under § 2252. *See e.g.*, *United States v. Richardson*, 713 F.3d 232 (5th Cir. 2013).

1

took all the necessary steps to make a product available to the public in a publically accessible location, and whether or not a party took that product is irrelevant to both the purpose of § 2252 and to his role as distributor. For that reason, the conviction of Appellant George Husmann for "distribution" under 18 U.S.C. § 2252 should be upheld.

As explained in my colleague's discussion of how peer-to-peer networks[2] operate, when a file is placed into the

---

[2] Speaking to its original purpose, the Supreme Court found "peer-to-peer networks [were originally] employed to store and distribute electronic files by universities, government agencies, corporations, and libraries, among others." *MGM Studios, Inc. v. Grokster*, Ltd., 545 U.S. 913, 20 (2005). Peer-to-peer programs allow users through their computers to communicate "directly with each other, not through central servers." *United States v. Caparotta*, 890 F. Supp. 2d 200, 202 (E.D.N.Y. 2012) (quoting *Grokster*, 545 U.S. at 919-20). These file sharing components "combine[] two functions: the ability to search for and download the files from other users, and *the ability to make files on one's own computer available to other users*." *Lewis*, 554 F.3d at 211 (emphasis added). "A P2P program user can make his files accessible for browsing and downloading by other users by placing such files into a designated folder (the 'shared folder') that will *automatically* share its contents with the network." *Caparotta*, 890 F. Supp. 2d at 919-20 (citing *United States v. Chiaradio*, 684 F.3d 265, 271 (1st Cir. 2012) (emphasis added)). "The most common mode of distribution today is 'open' P2P file-sharing." *Report to Congress: Federal Child Pornography Offense: Executive Summary*, 25 Fed. Sent. R. 334, 2013 WL 8171786, at *14 (June 1, 2013). "Open" sharing allows distribution

"shared" folder, it is available to anyone who has the network on their own computers, and readily accessible by typing in relevant search terms. *United States v. Lewis*, 554 F.3d 208, 211 (1st Cir. 2009). "Also by default, any file a user downloads through [a peer-to-peer program] is automatically placed in that 'Shared' folder and is therefore offered by that user for further downloads by other users." *Id.* Thus, a picture uploaded into a "shared" folder enters an expanding "international network of interconnected computers" and is available to "anyone else on the Internet" with this program.[3]

---

"impersonal[ly] and indiscriminate[ly]" to anyone with the program. *Id.* Other types, "reflecting a significant evolution of technologies used to distribute child pornography . . . in the last decade" include "closed" programs, as well as "pure," "centralized" and "hybrid" networks, differing in how and where a file is stored and accessed. *Id.*; *see also Columbia Pictures Indus., Inc. v. Fung*, 710 F.3d 1020, 1025-26 (9th Cir. 2013). These programs have "changed the way typical offenders today receive and distribute child pornography." 25 Fed. Sent. R. 334, 2013 WL 8171786, at *5. Most worrying, a child porn distributor does not "need[] any particular technological expertise" and because P2P networks cut out a centralized server (or "middle man"), there are no records." Michael J. Henzey, *Going on the Offensive: A Comprehensive Overview of Internet Child Pornography Distribution and Aggressive Legal Action*, 11 Appalachian J. L. 1, 50 (2011). As a result, peer-to-peer networks are "stimulating the supply in the interstate market [of] child pornography." Adam Walsh Child Protection and Safety Act of 2006, Pub. L. 109-248, § 501, 120 Stat. 587 (2006).

[3] Peer-to-peer sharing programs are free to the public via download. (App. vol. II at 199a.)

*Reno v. ACLU*, 521 U.S. 844, 849 (1997); *see also Lewis*, 554 F.3d at 211.

Key to the analysis of whether Husmann "distributed" the pornography by placing it into his "shared" folder is the type of peer-to-peer network which was used in this case. It was 360 Share Pro.[4]  360 Share Pro "utilizes the LimeWire network to operate." (App. vol. II at 186a.) LimeWire, often involved in the relevant case law discussed within, functions through an open and centralized "Gnutella network," and "users can share all files stored on their computers with other LimeWire users." *Arista Records LLC v. Lime Grp. LLC*, 784 F. Supp. 2d 398, 410 (S.D.N.Y. 2011) (internal quotation marks omitted) ("LimeWire recommends that all LimeWire users share generously with one another."). Further,

> LimeWire then scans the computers of other LimeWire users, to locate files that match the search criteria. The LimeWire user can download any files that LimeWire locates. When the user downloads a file, LimeWire transfers a digital copy of the file from the computer on which it is located to the LimeWire user's computer.

*Id.* at 410-11. Thus, once a file is placed in a shared folder it is "uploaded," and available to the online community. (App. vol. II at 203a.)

---

[4] 360 Share Pro is a subsidiary user of the greater LimeWire network. (*Id.* at 186a.)

We must not lose sight of the nature of Husmann's crime.[5] Child pornography has the ability to perpetually harm the child posed or acted upon in the image or video. "Many victims live with persistent concern over who has seen images of their sexual abuse and suffer by knowing that their images are being used by offenders for sexual gratification . . . ." 25 Fed. Sent. R. 334, 2013 WL 8171786, at *4. Once images of child pornography are distributed over the Internet, "it is impossible to eradicate all copies of [them]." *Id.* More troubling, the prevalence and pervasiveness of child pornography has increased dramatically in the Internet age. § 501, 120 Stat. 587. ("The advent of the Internet has greatly increased the ease of transporting, distributing, receiving, and advertising child pornography in interstate commerce."). Moreover, in subsequent findings, Congress noted "[t]he technological ease, lack of expense, and anonymity in obtaining and distributing child pornography over the Internet has resulted in an explosion in the multijurisdictional distribution of child pornography." *Prosecution—Child Pornography Cases*, Pub. L. 110-358, § 102, 122 Stat. 4001 (2008). The House of Representatives, in the report underlying the statute in question, 18 U.S.C. § 2252,[6] states:

> These disturbing images litter the Internet and pedophiles can purchase, view, or exchange this material with virtual anonymity . . . and [the Internet's] expansion . . . has led to an explosion

---

[5] If the majority prevails, I implore Congress to immediately update 18 U.S.C. § 2252 to prevent the uploading of images to a peer-to-peer network by defining such action as "distribution."

[6] Cited as the "Child Protection Act of 2012."

5

in the market for child pornography, making it easier to create, access, and *distribute* these images of abuse.

H.R. Rep. No. 112-638 (2012), *reprinted in* 2012 U.S.C.C.A.N. 662, 663 (emphasis added).

The ease, anonymity, and virtual untraceability with which Husmann made child pornography globally available is the engine behind § 2252, and the reason that "distribute" should be given a broader interpretation than the majority gives it. In analyzing the plain meaning of the statute, we need not define the outer boundaries of the term "distribution"; rather, we need only answer the specific question of whether placing an image of child pornography into a modern day "shared" folder as part of a peer-to-peer network is "distribution," as the District Court found.[7]

If a statutory term is undefined, we must apply the basic principles of statutory interpretation when analyzing the definition of "distribution." *See Smith v. United States*, 508 U.S. 223, 228 (1993) ("When a word is not defined by statute, we normally construe it in accord with its ordinary or natural meaning."). First, we must determine "whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case." *Marshak v. Treadwell*, 240 F.3d 184, 192 (3d Cir. 2001). Looking both to Black's and Merriam-Webster's dictionaries, we find the plain meaning of "distribute" to be: "1. To apportion; to divide among several.

---

[7] The parties fail to raise the "rule of lenity," *see, e.g.*, *United States v. Cheeseman*, 600 F.3d 270, 276 (3d Cir. 2010), in their briefs on appeal and thus the issue is deemed waived.

6

2. To arrange by class or order. 3. To deliver. 4. To spread out; to disperse." *Black's Law Dictionary* 487 (9th ed. 2009). Furthermore, in construing statutes, "we must, of course, start with the assumption that the legislative purpose is expressed by the ordinary meaning of the words used." *Richards v. United States*, 369 U.S. 1, 9 (1962). As the Supreme Court recognized, "reasonable statutory interpretation must account for both 'the specific context in which . . . language is used' and 'the *broader context of the statute as a whole*.'" *Util. Air Regulatory Grp. v. EPA*, 134 S. Ct. 2427 (2014) (quoting *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997)) (emphasis added). Clearly the actions undertaken by Husmann, placing the images in a folder shared globally, dispersed and apportioned these images to third parties within the plain meaning of the statute.[8]

The purpose of Congress in § 2252 and prior related statutes was to counter the now readily available market for child pornography over the Internet. H.R. No. 112-638. As early as 1982, the Supreme Court recognized the harmful and reoccurring issues created by the distribution of child pornography. *See New York v. Ferber*, 458 U.S. 747, 759-60 (1982). "[T]he distribution network for child pornography must be closed if the production of material which requires

---

[8] Lower courts applying this plain meaning approach have held the definition of "distribution" is not limited to situations in which someone downloads an image. *See Caparotta*, 890 F. Supp. 2d at 204. ("Considering the plain meaning of 'distribute,' the court finds that defendant's placing of child pornography files in a shared folder accessible to others via a P2P program on the internet constitutes 'distribution' under Section 2252(a)(2) to persons to share and download.").

7

the sexual exploitation of children is to be effectively controlled." *Id.* at 759. This trade includes the rampant use of peer-to-peer networks as "pedophiles use child pornography distribution methods other than traditional websites that are difficult to detect and disrupt, such as peer-to-peer technology." Michael J. Henzey, *Going on the Offensive: A Comprehensive Overview of Internet Child Pornography Distribution and Aggressive Legal Action*, 11 Appalachian J. L. 1, 50 (2011) (citing Chad M.S. Steel, *Child Pornography in Peer-to-Peer Networks*, 33 Child Abuse & Neglect 560, 560 (2008)).

The purpose of § 2252 is, amongst others, to prevent the repeated abuse of children used to create the pornography by stopping the dissemination of images over the Internet. *See* § 501, 120 Stat. 587. Congress itself, when passing the Adam Walsh Child Protection and Safety Act of 2006, acknowledged the market for child pornography "through virtually every Internet technology, including . . . peer-to-peer [networks.]" *Id.* Further, Congress found distribution to be paramount to the trade and further exposure of the exploited children, *see id.* ("Prohibiting the intrastate . . . distribution . . . of child pornography . . . will cause some persons engaged in such intrastate activities to cease all such activities, thereby reducing both supply and demand in the interstate market for child pornography."), and rested its findings on the premise that "[a] substantial interstate market in child pornography exists, including not only a multimillion dollar industry, but also a nationwide network of individuals openly advertising their desire to exploit children and to traffic [and] distribute child pornography with the expectation of receiving other child pornography in return." *Id.* Contextually, one can draw an inference from the findings underlying this Act that the

8

prevention of Internet distribution across peer-to-peer networks was contemplated as part of its purpose, and that purpose can be addressed by not limiting the definition of the term "distribution."

Additionally, "distribution" has not been defined as requiring a subsequent download in similar contexts,[9] most notably the transferring of music over similar peer-to-peer networks in violation of copyright distribution rights. *See Grokster*, 545 U.S. at 919 (holding that "one who distributes a device with the object of promoting its use to infringe copyright . . . is liable"). "Electronic distribution on a peer-to-peer, without license from the copyright owners, violates the copyright owners' exclusive right of distribution . . . ." *Capitol Records, Inc. v. Thomas-Rasset*, 692 F.3d 899, 903 (8th Cir. 2012).

Finally, the Sentencing Guidelines definition, which does not require a download,[10] has been incorporated by a

---

[9] In drug distribution cases, "distribution" has been broadly interpreted to include any "acts perpetrated in furtherance of a transfer or sale, such as arranging or supervising the delivery, or negotiating for or receiving the purchase price." *United States v. Jackson*, 213 F.3d 1269, 1296 (10th Cir. 2000), *vacated and remanded on other grounds*, 531 U.S. 1038 (2000) (internal quotation marks omitted); *see also* 18 U.S.C. § 841(n) ("Distribute, defined, means to sell, issue, give, transfer, or otherwise dispose of.").

[10] It is noteworthy that the United States Sentencing Guidelines § 2G2.2, when directly addressing crimes committed under § 2252, has defined "distribute" in the broader act as

9

number of Circuits for similar crimes.[11] *See United States v. Layton*, 564 F.3d 330, 335 (4th Cir. 2009) (collecting cases) ("We concur with the Seventh, Eighth, and Eleventh Circuits and hold that *use* of a peer-to-peer file-sharing program constitutes 'distribution' for the purposes of U.S.S.G. § 2G2.2(b)(3)(F)." (emphasis added).); *see also Chiaradio*, 684 F.3d at 282 (noting "[t]he fact that the defendant did not actively elect to transmit those files is irrelevant" to distribution). Several Circuits in this context have described the process of placing an image into a shared folder as "distribution." *See, e.g.*, *United States v. Vadnais*, 667 F.3d 1206, 1209 (11th Cir. 2012) (noting control over what images

---

including possession with intent to distribute, production, transmission, advertisement, and transportation, related to the transfer of material involving the sexual exploitation of a minor. Accordingly, *distribution includes posting material involving the sexual exploitation of a minor on a website for public viewing* but does not include the mere solicitation of such material by a defendant.

U.S.S.G. § 2G2.2(b)(3)(F) cmt. n.1 (emphasis added).

[11] Our Circuit has followed this defining course, albeit for "aiding and abetting the transportation of child pornography" in an unpublished opinion. *See United States v. Schade*, 318 F. App'x 91, 94 (3d Cir. 2009) ("[W]e cannot conclude that the jury was unreasonable in determining from this evidence that Schade intentionally kept child pornography files in the 'My Downloads' folder and knew that doing so would allow Bearshare users to access and upload them.").

are shared affects distribution); *Arista Records*, 784 F. Supp. 2d at 411 n.6 (describing the open and encouraged distribution process allowed through peer-to-peer networks). The Ninth Circuit, in a sentencing case, held "that 'evidence of a deliberate, affirmative action of delivery' is not required to sustain a conviction for distribution of child pornography under 18 U.S.C. § 2252(a)(2)." *United States v. Vallejos*, 742 F.3d 902, 907 (9th Cir. 2014) (quoting *United States v. Budziak*, 697 F.3d 1105, 1108-09 (9th Cir. 2012)); *see also, e.g.*, *United States v. McManus*, 734 F.3d 315, 319 (4th Cir. 2013) (("[Section] 2G2.2(b)(3)(F) is a residual enhancement" that may be applied "when a defendant knowingly permits others to access and retrieve child pornography files in the defendant's possession, even if he does so passively."); *United States v. Reingold*, 731 F.3d 204, 229–30 (2d Cir. 2013) ("[K]nowingly placing child pornography files in a shared folder on a peer-to-peer file-sharing network constitutes distribution . . . even if no one actually obtains an image from the folder" and "without regard to whether the defendant's primary purpose in placing child pornography files in a file-sharing program was to receive or to distribute child pornography.").

The majority misapplies the need for a download to create distribution, where other factual bases have greater merit in interpreting the definition. For example, in *Shaffer*, the Tenth Circuit, acknowledging that a law enforcement agent downloaded the images from a shared folder, noted that while the defendant "may not have actively pushed pornography on [peer-to-peer] users, . . . he *freely allowed them access to his computerized stash* of images and videos and openly invited them to take, or download, those items." 472 F.3d at 1223 (emphasis added). Other Circuits, in the

11

sentencing context, have recently interpreted the statutory interpretation of "distribution" as, "when [a party] either transfers it to another person or makes it *accessible* to others through a file-sharing website or peer-to-peer network." *United States v. Grzybowicz*, 747 F.3d 1296, 1308 (11th Cir. 2014) (emphasis added); *see also United States v. Collins*, 642 F.3d 654, 655-57 (8th Cir. 2011) (affirming a district court's determination of "distribution" to only require placing the images in a shared folder of a peer-to-peer network and knowledge of how that system works).[12] This is consistent with the technology, where users control what is in their shared folders, and, once removed, those images are not accessible to the Internet. *See Vadnais*, 667 F.3d at 1208-09.

Determining that placing an image of child pornography into a shared folder constitutes "distribution" would, in light of the technological advances, encompass the plain meaning and the purpose of § 2252. *See United States v. C.R.*, 792 F. Supp. 2d 343, 367 (E.D.N.Y. 2011), *overruled on other grounds by United States v. Reingold*, 731 F.3d 204 (2d Cir. 2013) (noting "technical advances have led to [child pornography's] proliferation over the past twenty years"); *see also* 25 Fed. Sent. R. 334, 2013 WL 8171786, at *6 (discussing "dramatic technological changes related to computers and the Internet over the past decade . . . which have changed the way typical offenders today . . . distribute child pornography").

In the alternative, even if the majority's definition of "distribution" is accepted, I would hold that the District Court

---

[12] Husmann undertook the same action with a requisite knowledge of file sharing.

did not plainly err in denying Husmann's Rule 29 motion to enter a judgment of acquittal, because the evidence was sufficient for the jury to find Husmann distributed child pornography beyond a reasonable doubt. The majority finds the District Court committed plain error by denying Husmann's motion for acquittal on the basis that the government "did not present evidence that Husmann's attempts to distribute child pornography ever succeeded." Maj. Op. at 18. As the majority notes, because the issue of sufficiency of the evidence as to "distribution" was raised for the first time on appeal, we undertake plain error review. *Id.* at 7 n.2. Plain error review requires the Appellant to demonstrate: "(1) there was an error; (2) the error is clear or obvious; and (3) the error affected the appellant's substantial rights, which in the ordinary case means it affected the outcome of the district court proceedings." *Id.* (quoting *United States v. Andrews*, 681 F.3d 509, 517 (3d Cir. 2012)). Thus, it would need to be clear or obvious that the District Court erred in concluding that a reasonable jury could have found that Husmann distributed child pornography.[13]

---

[13] It must also be noted that no objection was made when at trial, the District Judge charged the jury with the following definition of "distribution":

> [T]he definition of distribution is if you find the defendant knowingly placed images into the sharing folder of a file sharing program, and if you find that the defendant knew that placing the files in that folder allowed others to gain access to his folder and download those images you may find the defendant guilty of distribution.

Despite Husmann's present claims to the contrary, the testimony elicited could have allowed a rational jury to find Husmann guilty for distributing child pornography. Jurors can make reasonable inferences which naturally rise from the evidence. *See Ansell v. Green Acres Contracting Co.*, 347 F.3d 515, 525 (3d Cir. 2003). First, the jury could have reasonably found Husmann uploaded the pornography into a shared folder.[14] Second, the jury could have found beyond a

---

(App. vol. II at 389a.)

[14] Ample evidence was provided by the Government proving Husmann uploaded the images. F.B.I. Forensic Agent Price then testified the images uploaded by Husmann onto this system were "shared."

> [ATTORNEY:] So looking at this document here, can you tell if this [file] was actually distributed and then uploaded?
> [AGENT PRICE:] Yes, it is being shared by the 360 Share Pro for the online community to download.
> [ATTORNEY:] Do you have an expert opinion whether that was successfully uploaded?
> [AGENT PRICE:] I do.

(App. vol. II at 202a.) The testimony concluded with confirmation the child pornography uploaded onto the file sharing network was being "shared." The thumb drive contained images found in a folder titled "Artpics5." (*Id.* at 264a.) These same pictures were found shared in 360 Share Pro in a folder called "Adorablecuties." (*Id.* at 261a, 264a.)

14

reasonable doubt that at least one of the many users with the file sharing program downloaded the images Husmann made globally available. This testimony included descriptions of the global accessibility of peer-to-peer networks and the contents of the shared folders:

> [AGENT PRICE:] [LimeWire and 360 Share Pro] are programs that are termed as peer-to-peer sharing programs where there is no centralized computer where the information is stored.
>
> Basically, anybody on the internet who has access to the software can share files and folders *amongst all of the different users in the world*. It is a peer-to-peer system, there is not centralized storage system of the files.

Agent Price testified these images were uploaded onto 360 Share Pro from a thumb drive.

> [ATTORNEY:] [Y]ou can tell that this file is uploaded on 360 Share Pro?
> [AGENT PRICE:] Yes, it is being shared to the online community.
> [ATTORNEY:] On [Husmann's] computer?
> [AGENT PRICE:] Yes
> [ATTORNEY:] And in your expert opinion it was actually successful?
> [AGENT PRICE:] Yes.

(*Id.* at 203a.)

15

(App. vol. II at 185a-186a (emphasis added).) He further testified about the purpose of uploading an image:

> [AGENT PRICE:] [Images are] being shared by the 360 Share Pro for the online community to download.

(*Id.* at 202a.) Finally, Agent Price testified that the specific images were available for download through the peer-to-peer network:

> [ATTORNEY:] Can you tell [if] this image was ever actually successfully uploaded?
> [AGENT PRICE:] Yes.
>
> . . . .
>
> [ATTORNEY:] And do you have a professional opinion as to whether this was successfully uploaded onto the internet?
> [AGENT PRICE:] Yes.
>
> . . . .
>
> [I]t was shared for all people to view *and download*.

(*Id.* at 218a-219a (emphasis added).)

Proof beyond a reasonable doubt is met by the "prosecution persuad[ing] the factfinder 'beyond a reasonable doubt' of the facts necessary to establish all elements of the offense." *United States v. Vazquez*, 271 F.3d 93, 125 (3d Cir. 2001) (citing *Sullivan v. Louisiana*, 508 U.S. 275, 277–78 (1993)). Furthermore, the government, as verdict winner, is entitled to "the benefit of all reasonable inferences capable of being drawn therefrom, and an . . . interpret[ation of] the evidence in the light most favorable to [it]." *Hahn v. Atl.*

*Richfield Co.*, 625 F.2d 1095, 1099 (3d Cir. 1980) (citing *Cont'l Ore Co. v. Union Carbide & Carbon Corp.*, 370 U.S. 690, 696 (1962)). Review of the record suggests enough evidence was presented to allow the jury to find Husmann guilty of a distribution crime that included the majority's requirement of a download. The District Court did not "clear[ly] or obvious[ly]" err in denying Husmann's motion for acquittal. In sum, the evidence presented could have allowed a rational jury to conclude, beyond a reasonable doubt, that Husmann uploaded the images into his shared folder, made images of child pornography available to a global audience, and that at least one member of Husmann's global network downloaded them, thus "distributing" child pornography as charged by the District Court.

At bottom, I find the majority's definition of "distribution" to be overly narrow in regards to the plain meaning and purpose of 18 U.S.C. § 2252, or, in the alternative, find the District Court did not commit plain error because a rational jury could have found that a third party downloaded the accessible pornography. Thus, for the aforementioned reasons, I respectfully dissent.